In re Gerald Dean WEEKS, Debtor.

**FEDERAL MORTGAGE
MANAGEMENT, INC.,
Plaintiff,**

v.

**Gerald Dean WEEKS, Defendant.**

**Bankruptcy No. 91–23713–D.
Adversary No. 91–0146.**

United States Bankruptcy Court,
W.D. Tennessee, W.D.

Nov. 15, 1991.

C. William Denton, Borod & Kramer, Memphis, Tenn., for plaintiff.

N. Alan Lubin, Memphis, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING FEDERAL MORTGAGE MANAGEMENT, INC. MOTION FOR SUMMARY JUDGMENT

BERNICE BOUIE DONALD,
Bankruptcy Judge.

The above-referenced core proceeding[1] came on for hearing on motion for summary judgment on the complaint to determine dischargeability of a debt, and motion for summary judgment filed by Federal Mortgage Management, Incorporation, pursuant to 11 U.S.C. § 523(c) and F.R.B.P. 4007. The following shall constitute findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

---

1. 28 U.S.C. § 157(b)(*l*).

## FACTS

The Debtor, Gerald Dean Weeks, is a former officer, director, and shareholder of G. Weeks Securities, Inc. (hereafter "GWS") and G. Weeks and Company, Inc. (hereafter "GWC"). GWS and GWC formerly operated as dealers in government securities. However, only GWS was a Chapter 11 Debtor in Western District of Tennessee under the case number 79–22564. In 1980, co-trustees were appointed in the GWS bankruptcy and subsequently commenced an adversary proceeding against the Debtor and GWC, Inc. to recover fraudulent transfers of GWS funds to the Debtor and GWC.

The Plaintiff, Federal Mortgage Management, Incorporated (hereafter "FMM") is a Tennessee corporation which is the successor in interest to G. Weeks Securities, Inc. Pursuant to the confirmed joint plan of reorganization and order of final decree closing the case, FMM was vested with any causes of action or judgments against the Debtor and GWC.

On September 22, 1986, summary judgment was entered in favor of the co-trustees in the amount of two hundred eighty eight thousand six hundred sixty nine dollars and ninety five cents ($288,669.95). The judgment was based on "the overwhelming documentary and testimonial evidence presented by former employees of GWS," in support of a finding that the Debtor was the recipient of substantial avoidable fraudulent transfers. The testimony upon which the judgment was based, was presented at a hearing on March 27, 1986, though the Debtor did not appear.[2] The court's findings and conclusions were contained in a memorandum of decision granting judgment to the Plaintiffs entered on April 1, 1986. Subsequently, the memorandum was set aside on grounds that the Debtor's absence from the hearing was due to his lack of notice.

After the Memorandum was set aside, the Debtor did not present any evidence rebutting that which was presented by the co-trustees at the March 1986 hearing. Instead, the Debtor's challenge to the memorandum dealt exclusively with a settlement agreement, which the Debtor asserted that the co-trustees had consented to and which would have precluded any recovery by the co-trustees. After considering the record, the bankruptcy court entered judgment in favor of the co-trustees.

The judgment was appealed by the Debtor without benefit of a stay to the District Court, which affirmed the bankruptcy court. On September 8, 1988, the decisions of the bankruptcy and district courts were affirmed by the Sixth Circuit Court of Appeals. The Sixth Circuit characterized the bankruptcy court's summary judgment as "representing amounts fraudulently transferred by GWS, via GWC, to the Debtor."

The Debtor, admitting that fraudulent transfers are non-dischargeable, petitioned the Sixth Circuit to amend its opinion to remove the reference to "fraudulent." On August 18, 1988, the Sixth Circuit denied the Debtor's petition.

The instant Chapter 7 case was commenced on March 21, 1991. The Debtor asserts that his debt to FMM, based on the prior judgment, is dischargeable because the debt did not result from the Debtor's receipt of fraudulent transfers from GWS. Mr. Weeks further asserts that, despite the appeals, he has never had an opportunity to litigate the fraudulent transfer issue. Mr. Weeks states that the April, 1986 memorandum did not address this issue but referred only to Mr. Weeks' acknowledgement of his debt to GWS. However, FMM asserts that Mr. Weeks' present contentions are the same as those made in the Debtor's petition for rehearing denied by the Sixth Circuit, and therefore, Weeks should be estopped from litigating these issues at this time.

## ISSUE

Whether the doctrine of res judicata or "claim preclusion" bars the Debtor from asserting fraudulent transfer issues in light of the prior judgment entered by the bankruptcy court in 1986 which judgment

2. Plaintiff's Exhibit 1.

was affirmed by the District Court and the Circuit Court of Appeals?

## DISCUSSION

The term "res judicata" or "claim preclusion" is often used to describe generally all aspects of preclusion law. It is more accurately applied to the doctrine which holds that once a claim is fully litigated between certain parties and "merged" into a final judgment, from a court of competent jurisdiction those same parties are barred from relitigating that claim. *In re Graham*, 131 B.R. 275 (Bankr.Pa.1991). See also, Wright, Miller & Cooper, Federal Practice and Procedure § 4402, Footnotes 1 & 2; Restatement (Second) of Judgments. Under the doctrine of claim preclusion, a party is barred from raising an issue in subsequent litigation if it was actually litigated or could have been raised even if it were not litigated in a prior action between the same parties. *In re Graham*, 131 B.R. at 278. Thus, res judicata will give a preclusive effect to a judgment in foreclosing claims that *were* or *should have been* raised in earlier proceedings. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

One type of preclusive effect that a final judgment can have in a subsequent litigation is often described as "collateral estoppel", a more narrow principle than res judicata. The doctrine of collateral estoppel recognizes that if an issue or a claim is actually litigated to final judgment by certain parties and was necessary to the rendering of that judgment, those same parties are barred from re-litigating that issue in subsequent litigation even if different claims are involved. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). See, Wright, Miller & Cooper, Federal Practice and Procedure, § 4402 footnotes 1 & 2; Restatement (Second) of Judgments § 27 (1980). The Supreme Court has recognized that collateral estoppel is applicable in discharge exception proceedings pursuant to Section 523(a). *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Both res judicata and collateral estoppel share the common goals of judicial economy, predictability, and freedom from harassment. *Gregory v. Chehi*, 843 F.2d 111 (3rd Cir.1988). Thus, the main policies behind the doctrines of claim and issue preclusion are (1) to protect litigants from the inequitable burden of relitigating the same matters with the same parties, and (2) judicial economy. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). These policies are not so important, however, as to always preclude the consideration of other equally important policies. Thus courts have often limited the application of preclusion doctrines to avoid an unjust result. See, *Federated Dept. Stores v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); 1B Moore's Federal Practice 0.405[11] pp. 258–259 (1988); Wright, Miller & Cooper, supra §§ 4411–4414. The crucial determination in applying this doctrine is whether the matter raised in the subsequent litigation was an "issue" within the previously litigated claim or an independent "claim" that was not litigated or could not have been litigated. In Judge Leffler's memorandum opinion and order of September, 1985, the court specifically stated:

> The Court is in agreement with the legal position asserted by able counsel for Mr. Weeks that upon election of a remedy and receipt of the benefit therefrom where two or more inconsistent remedies exist, pursuit of the other is necessarily negated. The facts in this case, however, present a scenario of attempts by the Trustees to settle these matters by agreement with Mr. Weeks who consistently refused to cooperate. Therefore, it cannot be said that the Trustees received the benefit of "electing" a settlement remedy and are thus entitled to pursue a judgment against Mr. Weeks.

> Having determined that much, the question becomes whether the Trustees are entitled to a judgment in the amount of $288,699.95 against Mr. Weeks. Based upon the above findings, statements of counsel, the *overwhelming documentary and testimonial evidence presented*

*by former employees of the Debtor, and the case record as a whole this court is of the opinion that the Trustees are entitled to such judgment as a matter of law.* (Emphasis added).

■ In the present dispute, it appears from the memorandum opinion and order of the bankruptcy court dated September, 1986, as well as the affirmation of the District and Appellate Courts, that the Debtor has had a *full opportunity to litigate the fraudulent conveyance issue.* Such a finding is based on the Sixth Circuit's characterization of the bankruptcy court's summary judgment as "representing amounts fraudulently transferred by GWS, via GWC, to the Debtor." The finding is further evidenced by the Debtor's subsequent petition to the Sixth Circuit to amend its opinion to remove the reference to "fraudulent". Even if the debtor had not actually litigated the issue, he still would be barred from litigating the issue now, inasmuch as, the Debtor had the opportunity to litigate the issues and given the fact that the doctrine of res judicata encompasses both issues that were litigated and those that could have been litigated in a prior proceeding. See *Migra, supra.* Moreover, Debtor did not seek to raise this issue at either level of the appeal, instead after Debtor has exhausted all appeals, Debtor now seeks to raise the issue anew in this proceeding. This smacks of an attempt to get a second bite of the apple.

■ Notwithstanding the doctrine of res judicata, it must be noted that the bankruptcy court is a court of equity. See 11 U.S.C. § 105. A fundamental maxim of equity holds that equity will not aid those who have slept on their rights. 30 C.J.S., Equity, 100. The Debtor was successful in having the April 1986 Memorandum of Judge Leffler set aside based on the argument that his absence from the March, 1986 hearing, upon which the opinion was based, was due to his failure to receive proper notice. Nonetheless, the Debtor did not subsequently present any evidence rebutting the evidence that was presented at the March hearing. Instead the Debtor's challenge to the memorandum dealt exclusively with a proposed settlement agreement between the Debtor and co-trustees. Therefore, at the very least, the Debtor is guilty of laches for his failure to pursue this matter until more than five (5) years after the entry of the bankruptcy court's opinion. Whether the debtor was negligent or unintentional in his failure to pursue his rights is irrelevant. Under the modern transactional view of claim preclusion, a Debtor is not permitted to raise issues in a second litigation which could have been raised under pleadings in earlier action. *In re Graham, supra.*

■ Debtor argues that the proper doctrine to apply is "issue preclusion" or "collateral estoppel." The doctrine of "collateral estoppel" or "issue preclusion" provides that when a court decides through actual litigation an issue of fact or law necessary to its judgment, that issue cannot be relitigated by a party to the first lawsuit in a subsequent lawsuit. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

For collateral estoppel to bar relitigation of issues, a four part test was developed by the Third Circuit in *Matter of Ross,* 602 F.2d 604 (3rd.Cir.1979), which held that in order for collateral estoppel to apply, the following factors must be present:

1) [T]he issue sought to be precluded must be the same as that involved in the prior action;

2) the issue must have been actively litigated;

3) it must have been determined by a valid and final judgment; and

4) the determination must have been essential to the prior judgment.

*Ross* at 608.

This four-part test has also been adopted in the Sixth Circuit. *Spilman v. Harley,* 656 F.2d 224, 228 (6th Cir.1981); *In re Four Corners Enterprises, Inc.,* 17 B.R. 156 (1982). Application of the *Ross* four-part test to the facts at issue clearly indicates that the doctrine of the collateral estoppel would also bar the Debtor from pursuing the present dispute. The fraudulent conveyance issue presently before the

court is the same issue the Debtor argued in the prior litigation. The fraudulent conveyance issue was also actively litigated, as evidenced by the September 1986 judgment of the bankruptcy court—the judgment being based on "the overwhelming documentary and testimonial evidence" in support of a finding that the Debtor, GWS, was a recipient of substantial avoidable fraudulent transfers. The bankruptcy court's Memorandum Opinion and Order constituted a valid and final judgment. Lastly, the determination of the fraudulent conveyance issue was essential to the bankruptcy court's judgment.

For the reasons set forth, the court finds that the Debtor is barred from relitigating the fraudulent conveyance issue.

### CONCLUSION

Based upon the above findings of fact, the court finds that the doctrines of res judicata and collateral estoppel bar the Debtor from relitigating the fraudulent conveyance issue with regard to his prior dealings with GWS and GWC as that issue was litigated by the parties in the prior bankruptcy proceeding and affirmed by two levels of appeals. Further, the court finds that the debtor's case is also barred by the equitable doctrine of laches.

Based on all the foregoing, FMM's Summary Judgment motion is granted for cause, and the Debtors complaint to determine dischargeability of a debt is dismissed with prejudice.

IT IS SO ORDERED.