United States Court of Appeals,

Fifth Circuit.

No. 93-8613.

In the Matter of Lebaron DENNIS, Debtor.

Lebaron DENNIS, Appellee,

v.

Audrey H. DENNIS, a/k/a Joyce Dennis, Appellant.

July 13, 1994.

Appeal from the United States District Court for the Western District of Texas.

Before JOHNSON, BARKSDALE, and DeMOSS, Circuit Judges.

JOHNSON, Circuit Judge:

After more than thirty-one years of marriage, LeBaron and Audrey ("Joyce") Dennis divorced. The divorce court awarded Joyce one-half of LeBaron's military retirement benefits, and LeBaron agreed to pay the taxes thereon. Six years after the divorce, LeBaron filed a petition for bankruptcy. He sought a discharge of his obligation to pay the taxes on Joyce's share of the retirement benefits. The bankruptcy court determined that LeBaron's obligation to pay the taxes constituted alimony, maintenance, or support under section 523(a)(5) of the Bankruptcy Code. The bankruptcy court therefore ruled that LeBaron's tax obligation was nondischargeable. The district court, reviewing the case on appeal, reversed. Finding that the bankruptcy court properly ruled that the debt in question was nondischargeable, we reverse.

I. Facts and Procedural History

Joyce and LeBaron Dennis married on December 18, 1954. At

1

that time, LeBaron was a medical student at Harvard Medical School with three semesters remaining until graduation.  Joyce obtained a clerk-typist job to pay for their living expenses.  She financially supported the family throughout LeBaron's last three semesters of medical school, as well as throughout LeBaron's internship after medical school.  Upon completion of his internship, LeBaron entered the Air Force as a physician.  He made it clear to Joyce that he did not want his wife—the wife of a doctor—working outside the home.  For the next twenty-eight years, therefore, Joyce worked as a full-time wife and mother.

In 1981, LeBaron retired from the Air Force as a full colonel. He then entered into private practice as a plastic surgeon. LeBaron experienced great financial success in the private sector. In 1982, just one year after retirement from the Air Force, LeBaron more than doubled his income.  In 1985, LeBaron earned well over $284,000 from his medical practice alone.  While the Dennis family was reaping significant monetary benefits, they were, at the same time, encountering grave family problems.  On July 14, 1985, LeBaron and Joyce separated.  They divorced approximately one year later, after more than thirty-one and a half years of marriage.

On the day before trial on the divorce issues, LeBaron and Joyce entered into a settlement agreement.  Among other things, they agreed that Joyce would obtain fifty percent of LeBaron's military pension.  During the settlement negotiations, LeBaron verbally offered to pay all of the taxes due on Joyce's share of the benefits.  Because Joyce had no degree, no skills, no job, and

no prospects for a job, she accepted the offer.[1] LeBaron agreed to—and did—memorialize this agreement in a writing.[2]

During the trial before the bankruptcy court, LeBaron testified that he wanted to preserve an interest in Joyce's share of the benefits should she predecease him. LeBaron believed that to preserve such an interest, he was required to have the Air Force deposit all of the funds into his bank account. He therefore offered to pay all of the income taxes due on Joyce's share of the pension if she would give up her right to have the Air Force send the money directly to her and allow the Air Force to deposit all of the funds into LeBaron's account instead. Joyce agreed. However, soon after signing the agreement, LeBaron learned that he did not have to have the money deposited into his account in order to preserve his interest in Joyce's share of the benefits. He thus decided not to pay any taxes on Joyce's amount. He instead declared that the benefits given to Joyce constituted alimony and deducted that amount from his gross income on his income tax forms.

---

[1]Joyce testified before the bankruptcy court that she agreed to vacate the Dennis' home in one month and allow LeBaron to serve as trustee over the retirement benefits in exchange for LeBaron's agreement to pay the taxes on her share of the pension. Both parties testified that Joyce had no other source of regular income and that the tax-free retirement income was important for Joyce's survival.

[2]LeBaron specifically explained that the agreement to pay the taxes was a part of the divorce settlement. The writing began as follows: "This letter will serve *to restate and clarify the agreement contained in our divorce agreement* ..." Rec. at 50, 52 (emphasis added). He stated that the Air Force would deposit the money into his account; he would provide Joyce one-half of the gross amount received and would pay the income taxes due for all of the benefits.

LeBaron chose not to inform Joyce of these decisions. Hence, she assumed that LeBaron was paying the taxes as required by their agreement.

Joyce learned otherwise in November 1988, when the Internal Revenue Service informed her that she owed taxes, interest, and penalties on all of the retirement benefits she had received in the previous two years. A tax court later found her liable for taxes and interest in the amount of $19,720.33.[3] Joyce thereafter filed suit against LeBaron in a Texas county court at law for breaching his agreement to pay the taxes on the retirement benefits. In her petition to that court, she quoted her divorce decree which "provided in part that "this Judgment is part of the division of community property between the parties and shall not constitute or be interpreted to be any form of spousal support, alimony, or child support.' " Rec. at 41. Joyce asked the Texas county court to find LeBaron liable for the $19,720.33 and to require LeBaron to specifically perform his duties outlined in the agreement by reporting the gross amount of the retirement benefits as income, by paying the taxes on the gross amount, and by *not* deducting the benefits from his gross income as alimony or spousal support.

The Texas county court, referring to language in the divorce decree, found that LeBaron's agreement to pay the taxes "was part of the division of community property between the parties and did not constitute nor should it be interpreted to be any form of

---

[3]Because she had acted in good faith, Joyce did not have to pay the penalties.

4

spousal support, alimony or child support."[4]   Rec. at 45.   The Texas county court held LeBaron liable for the taxes, ruled that LeBaron was required to pay the taxes in the future, and forbade LeBaron from deducting the military benefits from his gross income and claiming that the benefits constituted alimony or support.   The Texas county court signed its judgment, which was actually a consent decree, on Friday, January 3, 1992.

Four days—two working days—later, on Tuesday, January 7, 1992, LeBaron filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code.   He sought to have his past and future tax obligations to Joyce discharged.   LeBaron and his new wife filed a Chapter 13 proceeding in July of 1992.   They listed Joyce as one of only two creditors and proposed to make no payments whatever on the taxes due on Joyce's share of the retirement benefits.   LeBaron contended that because the Texas county court had found that the obligation did not constitute alimony or spousal support, the doctrine of collateral estoppel prevented the bankruptcy court from finding to the contrary.

The bankruptcy court disagreed.   The bankruptcy court ruled that it was bound neither by the characterization which the parties had given the obligation nor by the decision of the Texas county court at law.   Reviewing the facts of the case *de novo,* the bankruptcy court found that although the parties and the Texas county court had given the obligation another name, "it still

---

[4]This language mirrors, almost verbatim, the language in the divorce decree.

smell[ed] like alimony or support." The court therefore ruled that LeBaron's duty to pay Joyce's taxes was nondischargeable.

LeBaron appealed to the federal district court, and that court reversed. It ruled that the doctrine of collateral estoppel was applicable in the facts of this case and therefore prohibited the bankruptcy court from finding that the tax payments constituted alimony, maintenance, or support. Joyce now appeals.

## II. Discussion

### A. The Law Stated

Section 523 of Title 11 sets forth the exceptions to the general rule that all debts are dischargeable through bankruptcy. Subsection (a)(5)(B) is the provision in issue here. It reads:

> A discharge ... of this title does not discharge an individual debtor from any debt to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5)(B). Since 1970, the determination of whether a debt is nondischargeable under this provision has been a matter of federal bankruptcy law, not state law. *Grogan v. Garner,* 498 U.S. 279, 284, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991); *In re Joseph,* 16 F.3d 86, 87 (5th Cir.1994); *In re Biggs,* 907 F.2d 503, 504 (5th Cir.1990); *see also Brown v. Felsen,* 442 U.S. 127, 136, 99 S.Ct. 2205, 2211, 60 L.Ed.2d 767 (1979) (stating that "[b]y the express terms of the Constitution, bankruptcy law is federal law").

Bankruptcy courts must therefore look beyond the labels which state courts—and even parties themselves—give obligations which debtors seek to have discharged.[5]  *In re Davidson,* 947 F.2d 1294, 1296 (5th Cir.1991);  *In re Benich,* 811 F.2d 943, 945 (5th Cir.1987);  *In re Nunnally,* 506 F.2d 1024, 1027 (5th Cir.1975). Indeed, the mere fact that a creditor previously reduced her claim to a judgment does not preclude the bankruptcy court from inquiring into the *true* nature of the debt—and ruling contrary to the first court's judgment, if necessary.  *Brown,* 442 U.S. at 138, 99 S.Ct. at 2212;  *In re Brody,* 3 F.3d at 39.  In fact, a spouse is not barred from arguing in bankruptcy court that certain obligations constitute alimony or support even if that spouse argued to the contrary in state court.  *In re Brody,* 3 F.3d at 39.  To be sure, "[t]he ultimate finding of whether [a debt is nondischargeable, as "defined' by the bankruptcy law] is solely [in] the province of the bankruptcy court."  *In re Shuler,* 722 F.2d 1253, 1256 (5th Cir.),

---

[5]This is not only a clearly established principle in this Circuit, but no other circuit to review this issue has ever taken a contrary view.  *See, e.g., In re Brody,* 3 F.3d 35, 39 (2d Cir.1993) (deciding that labels given an obligation by the parties or the state court are not dispositive);  *In re Sampson,* 997 F.2d 717, 722 (10th Cir.1993) (concluding that the label attached to an obligation does not control);  *Adams v. Zentz,* 963 F.2d 197, 199 (8th Cir.1992) (determining that state law or the divorce decree characterization of the debt is not binding on bankruptcy courts);  *In re Gianakas,* 917 F.2d 759, 762 (3d Cir.1990) (ruling that bankruptcy courts must look beyond the label attached to settlement agreements to find the debt's true nature);  *In re Seibert,* 914 F.2d 102, 106 (7th Cir.1990) (ruling that state law does not control the issue of whether an obligation constitutes alimony, maintenance, or support);  *In re Long,* 794 F.2d 928, 930 (4th Cir.1986) (determining that labels are not controlling);  *Stout v. Prussel,* 691 F.2d 859, 861 (9th Cir.1982) (holding that the descriptions which parties give obligations in settlements or decrees are not conclusive).

*cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984) (quoting *Franks v. Thomason,* 4 B.R. 814, 820-21 (Bankr.N.D.Ga.1980)).

The reason for these well-settled principles is that parties and state courts, as a general rule, do not label obligations with federal bankruptcy standards in mind. Even if a state court reviews an issue which is similar to one created by the nondischargeability provision in the bankruptcy code, the state-law concept will likely differ from the specific federal bankruptcy doctrine in question. *Brown,* 442 U.S. at 135, 99 S.Ct. at 2211. This is especially true in cases which require courts to determine the nature of divorce settlements—and even more so when that question is raised in Texas, which has no such animal as alimony. *In re Joseph,* 16 F.3d at 87; *In re Nunnally,* 506 F.2d at 1027; *see also In re Jones,* 9 F.3d 878, 880 (10th Cir.1993) (ruling that debt may be in the nature of alimony, maintenance, or support under federal bankruptcy law, even though it is not legally qualified as alimony under state law).

Hence, in only limited circumstances may bankruptcy courts defer to the doctrine of collateral estoppel and thereby ignore Congress' mandate to provide plenary review of dischargeability issues. Collateral estoppel applies in bankruptcy courts only if, *inter alia,* the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue—and the facts supporting the court's findings are

8

discernible from that court's record. *In re Davis,* 3 F.3d 113, 115 (5th Cir.1993); *In re Shuler,* 722 F.2d at 1256. *See In re Comer,* 723 F.2d 737 (9th Cir.1984) (ruling that bankruptcy courts should not rely solely on state court judgments when determining the true nature of a debt for dischargeability purposes if so doing would prevent the bankruptcy courts from exercising their exclusive jurisdiction to determine whether the debt is dischargeable); *see also Browning v. Navarro,* 887 F.2d 553, 561 (5th Cir.1989) (providing that although the doctrine of res judicata is generally applicable to bankruptcy courts, the contours of the doctrine are "different for bankruptcy courts ... because tasks which have been delegated to [bankruptcy courts] by Congress may not be interfered with by the decisions of other courts.... [B]ankruptcy courts have a job to do and sometimes they must ignore res judicata in order to carry out Congress' mandate").

B. The Law Applied

Contrary to the plethora of cases which hold that bankruptcy courts must review for themselves the true nature of an obligation under section 523(a)(5)(B), LeBaron asks this Court to rule that the consent judgment signed by the Texas county court at law collaterally estopped the bankruptcy court here from finding that the tax payments in issue were, in truth, alimony, maintenance, or support. This we cannot do. As explained above, the first and most basic premise in the collateral estoppel doctrine is that the issue raised in the second tribunal must have been the identical issue raised and resolved in the first tribunal.

Such is not the case here. LeBaron can point to no state court finding or evidence which proves or even intimates that the parties or the Texas county court designed the settlement agreement and consent decree with federal bankruptcy standards in mind. To the contrary, Joyce's complaint and the agreed judgment merely referred to language in the divorce decree which characterized the property exchange as a property settlement, as opposed to alimony or support. The divorce decree, to be consistent with *Texas law,* could characterize the property distribution as nothing other than a property settlement. Joyce, to be consistent with *Texas law,* could argue nothing to the contrary before the Texas county court at law. The county court, to be consistent with *Texas law,* could find nothing contrary to Joyce's reference to the divorce decree's provision that the property transfer constituted a property settlement.

However, *federal bankruptcy law,* not Texas law, governs here. The bankruptcy court had neither the option nor the authority to apply state law in the case *sub judice.* That court was instead required to make findings of fact and conclusions of law in accord with federal bankruptcy law—and that is exactly what it did.

In *In re Joseph,* this Court set forth a nonexclusive list of factors which bankruptcy courts should review in deciding whether a divorce obligation constitutes alimony, maintenance, or support. The considerations include the parties' disparity in earning capacity, their relative business opportunities, their physical condition, their educational background, their probable future

10

financial needs, and the benefits each party would have received had the marriage continued. *In re Joseph,* 16 F.3d at 88. The bankruptcy court in this case, reviewing these and other similar factors, recognized that at the time of the divorce, Joyce was a fifty-four year old woman who had not worked outside the home in more than twenty-eight years. She had no job, no job offers, no work skills, and no college education. LeBaron, on the other hand, had an extremely successful medical practice and was earning well over a quarter of a million dollars a year at the time of the divorce. In light of these financial disparities, the bankruptcy court found that LeBaron's obligation to pay the taxes on Joyce's share of the military pension was, in true nature, alimony, maintenance, or support under section 523(a)(5)(B) of Title 11. The court therefore ruled that LeBaron's debt on the taxes was nondischargeable. Unlike the district court, which did not review the facts of this case in light of bankruptcy law, but instead held that the collateral estoppel doctrine controlled, we find no error in the bankruptcy court's decision.

## III. Conclusion

Because the issue decided in the Texas state court was not identical to the issue in question before the bankruptcy court, the doctrine of collateral estoppel is inapplicable in this case. The district court erred in ruling otherwise. We

REVERSE AND RENDER for Joyce Dennis.

11