**In the Matter of Stephen L. READ, Debtor.**

**Stephen L. READ, Plaintiff,**

**v.**

**Patricia I. READ, Defendant.**

**Bankruptcy No. 91–11433–JAB.
Adv. No. 95–1055–JAB.**

United States Bankruptcy Court, E.D. Louisiana.

June 21, 1995.

---

Thomas E. Schafer, III, New Orleans, LA, for debtor/plaintiff.

Andrew R. Thomas, Stone, Pigman, New Orleans, LA, for defendant.

### REASONS FOR ORDER

JERRY A. BROWN, Bankruptcy Judge.

This matter comes before the court on the complaint of Stephen L. Read ("Stephen Read" or "debtor") for a preliminary injunction. Patricia I. Read ("Patricia Read") opposes the motion. The court has reviewed the record, memoranda, and applicable law. Accordingly, the motion is denied for the reasons stated below.[1]

### I. FACTS

The ten year marriage of Stephen and Patricia Read was dissolved by a final judgment of dissolution of marriage issued in the 11th Judicial Circuit in and for Dade County, Florida (the "Florida court") on April 26, 1988 issued in accordance with a settlement agreement (the "April 26, 1988 judgment"). (Ex. P–1). The April 26, 1988 judgment set lump sum alimony at $140,000 and periodic alimony at $5,050 per month for 36 months. (*Id.* at 1–2). With regard to the lump sum alimony, the judgment stated that the debt was "not dischargeable in any bankruptcy proceeding". (*Id.* at 2).

In and around 1990, Stephen Read came under federal investigation for money laundering. In 1992, he was convicted on those charges and sentenced to federal prison. In December, 1994, he was moved to a half-way house, from which he is scheduled to be released in June, 1995.

Stephen Read filed the pending bankruptcy on April 10, 1991 as a case under Chapter 11 of the Bankruptcy Code. The matter was converted to a Chapter 7 case on October 25, 1991. Patricia Read was listed as an unsecured creditor on the debtor's schedules in amounts of $125,473.73 and $90,900.00. (Ex. P–2). An order of discharge was signed by the court on December 21, 1994. (Case No. 91–111433, Pl. 145).

In 1993, Patricia Read filed a motion for contempt against the debtor in the Florida court for failure to pay alimony. After a trial on the merits[2], the Florida court signed a judgment on November 2, 1994 (the "November 2, 1994 judgment") in favor of Patricia Read, finding the debtor in arrears to Patricia Read for alimony in the amount of $150,699.00, and interest in the amount of $70,651.00. (Ex. P–3; Pl. 4, Ex. 3). The $150,699.00 judgment amount is not broken down into lump sum or periodic alimony.

On December 28, 1994, Patricia Read filed Case No. 94–19903 in the Civil District Court for the Parish of Orleans, State of Louisiana, which seeks to make the November 2, 1994 judgment executory in Louisiana (the "Louisiana court").

The debtor filed the pending adversary proceeding on April 6, 1995. The complaint seeks the following relief: (1) a preliminary injunction directing Patricia Read to immediately cease continuation of the suit pending in the Louisiana court; (2) a determination that the November 2, 1994 judgment be declared void and without effect; (3) a determination that the amount owed to Patricia Read for lump sum money is a debt dischargeable under 11 U.S.C. § 523; (4) Patricia Read be held in contempt of court for violating the automatic stay; (5) Patricia Read be required to pay all actual damages,

---

1. These reasons for order constitute the court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052. The court has jurisdiction over the matter under 28 U.S.C. § 1334. The matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2. The judgment indicates that the trial was held on October 17 and October 28, 1994 (Ex. P–3), while Patricia Read's memoranda indicates the court took four days of testimony. (Pl. 10 at 3). In any event, it is clear that the trial lasted at least two days.

including attorney's fees incurred by the debtor in the Florida court; and (6) punitive damages of $125,473.73.

On April 12, 1995, the court signed a consent order: (1) preliminarily enjoining Patricia Read from continuing prosecution of the Louisiana court suit pending a hearing on the debtor's preliminary injunction on April 17, 1995, and (2) enjoining the debtor from alienating or otherwise transferring any assets he owns in Louisiana until April 17, 1995. (Pl. 3). On April 17, 1995, the court granted a preliminary injunction pending an evidentiary hearing to be held on April 25, 1995. (Pl. 5).

On April 25, 1995, the court held an evidentiary hearing on the debtor's complaint for preliminary injunction. (Pl. 8). The court also entered an order continuing the injunctions in effect pending further order of the court. (Pl. 7).

## II. ANALYSIS

### A. Burden of Proof

Stephen Read seeks a preliminary injunction to restrain Patricia Read from proceeding against certain trust assets in Louisiana allegedly belonging to him pending a trial on the complaint to set aside and void the November 2, 1994 judgment.

Rule 65 of the Federal Rules of Civil Procedure applies to adversary proceedings in bankruptcy cases. Bankr.R. 7056. Rule 65 requires that four elements be present before a preliminary injunction may issue. First, the movant must establish a substantial likelihood of success on the merits. Second, there must be a substantial threat of irreparable injury if the injunction is not granted. Third, the threatened injury to the plaintiff must outweigh the threatened injury to the defendant. Fourth, the granting of the preliminary injunction must not disserve the public interest. *Cherokee Pump & Equipment Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir.1994); *Landmark Land Co. v. Office of Thrift Supervision*, 990 F.2d 807, 810 (5th Cir.1993). A preliminary injunction is an extraordinary remedy, and should only

be granted if the movant has clearly carried the burden of persuasion on all four elements. *Cherokee Pump & Equipment*, 38 F.3d at 249. The decision to grant a preliminary injunction is to be treated as the exception rather than the rule. *Id.*

### B. Whether there is a substantial likelihood of success

█ The first element for issuance of a preliminary injunction is a substantial likelihood of success on the merits. The debtor argues that the November 2, 1994 judgment is void, and that the lump sum alimony awarded in the April 26, 1988 judgment is a dischargeable property settlement.[3]

Section 523(a)(5) of the Bankruptcy Code provides for nondischargeability of debts:

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit or property settlement agreement, but not to the extent that—
>
> .   .   .   .   .
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5).

Patricia Read contends that the doctrine of res judicata applies to bar the debtor from asserting that the lump sum alimony is a dischargeable debt.

█ The doctrine of res judicata has four elements: (1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases. *Eubanks v. Federal Deposit Ins. Corp.*, 977 F.2d 166, 169 (5th Cir.1992). Under the doctrine of res judicata, a party is barred from raising an issue in subsequent

---

**3.** The debtor has conceded that the periodic alimony award is nondischargeable.

litigation if it was actually litigated, or could have been raised even if it were not litigated, in a prior action between the same parties. *In re Weeks,* 133 B.R. 201, 204 (Bankr. W.D.Tenn.1991). Thus, res judicata will give a preclusive effect to a judgment in foreclosing claims that were or could have been raised in earlier proceedings. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Weeks,* 133 B.R. at 204.

In the case at bar, the first requirement is met because the parties in the Florida court proceedings and in this case are the same— Stephen Read and Patricia Read.

The second requirement is also met because the Florida court has competent jurisdiction to determine the amount of alimony owed by the debtor to Patricia Read. Indeed, it has long been the rule that the whole subject of domestic relations belongs to the law of the various states. *In re Smith,* 114 B.R. 457, 461 (Bankr.S.D.Miss.1990), *citing, Simms v. Simms,* 175 U.S. 162, 20 S.Ct. 58, 44 L.Ed. 115 (1899). Thus, the determination by the Florida court that the debtor is in arrears to Patricia Read on alimony payments was made by a court of competent jurisdiction.

The third element is complied with because the November 2, 1994 judgment entered by the Florida court was a final judgment on the merits.

The fourth element requires consideration of whether the same cause of action is involved in both cases. This question is a closer call. In the November 2, 1994 judgment, the Florida court found that the debtor was in arrears to Patricia Read in the amount of $150,699.00 "for alimony", plus interest through October 28, 1994 of $70,651.00, and interest at the rate of 12% per year from October 28, 1994. (Ex. P–3).

Patricia Read argues that the debtor should have raised the dischargeability defense in the Florida court, and that he is barred from raising it now.

In *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Supreme Court determined that in considering the dischargeability of a debt, the bankruptcy court was not confined to a review of a state court's record and judgment in prior state court proceedings, and that res judicata did not apply. The Supreme Court reasoned that the dischargeability issues were not identical to those arising under state law, so the parties had little incentive to litigate them. *Brown,* 442 U.S. at 134–35, 99 S.Ct. at 2211. The Supreme Court pointed out that it would serve no purpose to require parties to seek advisory opinions from the state courts in the event that a claim or issue may later be raised in a hypothetical bankruptcy hearing. *Id.*

The *Brown v. Felsen* decision is applicable, however, only to pre-petition state court judgments. *In re Canganelli,* 132 B.R. 369, 385 n. 3 (Bankr.N.D.Ind.1991); *In re McHenry,* 131 B.R. 669, 672 n. 2 (Bankr. N.D.Ind.1989). This is because when a state court judgment is entered prior to the filing of bankruptcy, the parties are denied a full opportunity to litigate the issues relating to dischargeability.

At least one court has addressed the applicability of res judicata to actions that were litigated after the filing of the bankruptcy petition. In the case of *In re Northwest Pipe and Casing Co.,* 67 B.R. 639, 643 (Bankr.D.Or.1986), the court, in analyzing the public policy sought to be upheld in *Brown v. Felsen,* noted that the Supreme Court had determined that "it would be unfair to force a plaintiff, involved in litigation with a nonbankruptcy defendant, to litigate issues which had no special significance at that time, but which would take on special significance if the defendant should decide to file bankruptcy". The court determined that the facts before it were "markedly different from *Brown v. Felsen* in that the first proceeding took place after the bankruptcy petition was filed, and it was the debtor who initiated the litigation". *Id.* The debtor, thus cognizant of the consequences of the district court action, "had incentive to litigate the issue fully." The debtor "knew, or should have known," that he could assert the relevant defense, but chose not to. As a result, the court found that he "must be bound by that decision". *Id.* The court went on to note that "[a] party acts at its own

risk if it chooses to forego asserting arguments in District Court with the assumption that if it loses there it can try again in the bankruptcy court." *Id. See also In re Grenert,* 108 B.R. 1, 6 (D.Me.1989) (Res judicata would be applied to consent order to prevent relitigation of status of wage claims when bankruptcy action was pending at the time of entry of the consent order); *In re Weeks,* 133 B.R. 201 (Bankr.W.D.Tenn.1991) (Res judicata precluded the debtor from litigating fraudulent conveyance issue when raised for the first time in bankruptcy proceedings, and the debtor had previously had a full opportunity to litigate the issue).

Thus, the inquiry in this case should focus on whether the debtor could or should have raised the dischargeability claim in the Florida court. It is uncontested that the debtor did not raise the claim in the Florida court.

The debtor argues that the ultimate finding of whether a debt is dischargeable must be made by the bankruptcy court. The debtor cites the following language from *Dennis v. Dennis (In re Dennis),* 25 F.3d 274, 278 (5th Cir.1994) in support of this proposition:

> To be sure, "[t]he ultimate finding of whether [a debt is nondischargeable, as 'defined' by the bankruptcy law] is solely [in] the province of the bankruptcy court." *In re Shuler,* 722 F.2d 1253, 1256 (5th Cir.), *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984) (quoting *Franks v. Thomason,* 4 B.R. 814, 820–21 (Bankr. N.D.Ga.1980)).

The court disagrees with the rigid and technical application of *Dennis* urged by the debtor in this case. In *Dennis,* the state court judgment was issued prior to the initiation of the bankruptcy action. *Dennis,* 25 F.3d at 277. The wife in *Dennis* could not have known that the husband would be seeking bankruptcy protection. Any attempt by the parties to litigate dischargeability issues would have been nothing more than a request for an advisory opinion by the state court. Furthermore, the *Shuler* case upon which the *Dennis* court relied also involved a pre-bankruptcy state court determination. *Shuler,* 722 F.2d at 1254.

■ It is true that whether a particular debt is in the nature of alimony, maintenance, or support is a matter of federal bankruptcy law, not state law. *In re Biggs,* 907 F.2d 503 (5th Cir.1990). However, state and federal courts have concurrent jurisdiction to decide the issue. *Siragusa v. Siragusa (In re Siragusa),* 27 F.3d 406, 408 (9th Cir.1994); *Goss v. Goss,* 722 F.2d 599 (10th Cir.1983) (construing former Section 17(a)(7) of the Bankruptcy Act); *In re Jenkins,* 94 B.R. 355, 361 (Bankr.E.D.Pa.1988); *In re McHenry,* 131 B.R. at 672–73 n. 2; *In re Canganelli,* 132 B.R. at 386 n. 2.

At the time of the Florida proceedings, Stephen Read was represented by counsel. Both were fully aware of the ongoing bankruptcy action. (Pl. 10, Ex. 1). The debtor is an experienced businessman and has no viable excuse for failing to raise the dischargeability issue in the Florida court. Here, unlike *Brown v. Felsen,* the preclusive effect of failing to raise dischargeability in the Florida court was clearly foreseeable. Raising the defense would not have required the Florida court to issue a speculative, advisory opinion. The then pending bankruptcy action was not hypothetical. A dischargeability defense raised in the Florida court would have been directly at issue. The Florida court could also have either resolved the dischargeability issue itself, applying appropriate federal law, or stayed the matter pending a ruling from the bankruptcy court. At the very least, the Florida court could have delineated between periodic and lump sum alimony in its judgment, thereby obviating the necessity of this court to retry the issue even if res judicata were not applicable. That the debtor only raised the issue in this court after an unfavorable decision by the Florida court smacks of an attempt to get two bites at the apple.

Under the circumstances, the court finds that application of the doctrine of res judicata is appropriate to bar the debtor from litigating whether the lump sum alimony is dischargeable. The Florida court found the debtor was liable for alimony, and this court will not disturb that finding. Because alimony is not dischargeable under 11 U.S.C. § 523(a)(8), the debtor has failed to show a

substantial likelihood of success on the merits.

### C. Whether there is a substantial threat of irreparable injury

 The general rule is that injunctive relief is not appropriate when money damages are an adequate remedy at law. *Estate of Daily v. Title Guaranty Escrow Service, Inc.,* 178 B.R. 837, 847 (D.Haw.1995), *citing, Flynt Distributing Co., Inc. v. Harvey,* 734 F.2d 1389, 1395 (9th Cir.1984). As stated by the court in *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3rd Cir.1989), *quoting, Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1964):

> Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

Any injuries to the debtor from the failure to issue a preliminary injunction will be in the form of monetary damages for which the debtor may be compensated at a later date. Thus, the debtor has failed to show a substantial threat of irreparable injury.

### D. Whether threatened injury to the plaintiff outweighs harm to the defendant.

The debtor had no immediate need for money while he was incarcerated. In addition, any money damages inuring to the debtor from Patricia Read's execution of the Florida November 2, 1994 judgment can be compensated by money damages. The debtor has failed to show that the threatened injury to him outweighs the harm to Patricia Read if a preliminary injunction is not issued.

### E. Whether public interest will be disserved.

This litigation is between private parties, and does not involve the public interest. This requirement is inapplicable.

### III. CONCLUSION

An order will be entered denying the debtor's request for a preliminary injunction, and setting a pretrial conference on the trial of the permanent injunction and remaining issues in the debtor's complaint.