**In re Joseph J. SKAJA, Debtor.**

**Casseb & Pearl, Inc., Plaintiff,**

v.

**Joseph J. Skaja, Defendant.**

**Mary Skaja, Plaintiff,**

v.

**Joseph Skaja, Defendant.**

**No. SA–03–CA–1221–XR.**

United States District Court,
W.D. Texas,
San Antonio Division.

Aug. 16, 2004.

Arthur J. Rossi, Jr., Attorney At Law, San Antonio, TX, for Appellant.

James A. Hoffman, Clemens and Spencer, P.C., James H. Pearl, II, Casseb & Pearl, San Antonio, TX, Vincent J. Liesenfeld, Salem Law Offices, Norman, OK, for Appellee.

## ORDER AFFIRMING THE BANKRUPTCY COURT'S DECISION

RODRIGUEZ, District Judge.

Before the Court is Joseph Skaja's appeal of the Bankruptcy Court's Memorandum Decision of August 22, 2003. Joseph Skaja divorced Mary Skaja and the divorce court ordered Joseph to pay part of Mary's attorney's fees. Subsequently, Joseph filed for bankruptcy and asked that the court ordered attorney's fees be discharged under 11 U.S.C. § 523(a)(15). The Bankruptcy Court ruled that the attorney's fees were not dischargeable under 11 U.S.C. § 523(a)(5). After reviewing the arguments of both parties and the Bankruptcy Court's Memorandum Decision, the Court AFFIRMS the Bankruptcy Court's decision and DISMISSES this cause.

### Factual Background

In 1981, Joseph and Mary Skaja were married. Their marriage produced no children. For twenty-five years, Joseph worked as an inventor in the sole cushioning industry. Joseph was known for designing the air sole for Nike in the 1970's. Joseph has continued to work in the shoe industry as a consultant and currently is employed with K–Swiss, a European athletic shoe manufacturer located in California. Over the years, Joseph has had economic success, some years earning in excess of $200,000.

Mary has a nursing license and a bache-

lor's degree in business administration.[1] Mary did not use either over the last 20 years of her marriage because she worked closely with her husband designing mock-ups of his cushioning invention. However, Mary claims no particular expertise in the shoe business. She is currently employed at Mailbox, Etc.

In April 2002, Joseph and Mary were divorced. At a bench trial, the divorce court awarded Mary $2,500 a month in alimony payable for a period of three years. This is the maximum amount awarded in Texas, unless a party is able to show a special need. The court also divided the assets 50/50, which included certain patents, royalty rights, and interests in companies. In addition, the court awarded Mary with $23,256.29 denominated as property division. Finally, the court ordered Joseph to pay $43,297 of Mary's attorney's fees, approximately half of the total.

On September 24, 2002, a newly remarried Joseph filed for bankruptcy under chapter 7. In addition, Joseph filed a dischargeability complaint for several of the divorce court's decisions including the attorney's fees. At trial, the Bankruptcy Court weighed the evidence of each party's financial situation. The Bankruptcy Court noted that Joseph had secured a consulting job with K–Swiss, paid for his then-girlfriend's divorce attorney, and now, upon remarrying, had a second income. The Bankruptcy Court also noted that Mary was diagnosed with clinical depression, received limited help from her eighty-year old parents, and that her sole source of income came from her job at Mailbox, Etc. While the Bankruptcy Court recognized

that Mary had a trust fund, Joseph did not establish the amount in the trust fund and did not argue its value.

Finally, the Bankruptcy Judge determined that Joseph's budget submitted to the Court did not accurately reflect his economic situation. Instead, the Bankruptcy Court considered the evidence and held that Mary was in an inferior economic situation. As a result of these findings, the Bankruptcy Judge denied Joseph's request for discharge of his divorce obligations.

## Standard of Review

██ Under Title 28 U.S.C. § 158, a district court has the right to review an appeal to a bankruptcy court's decision so long as the district court and the bankruptcy court are in the same judicial district. 28 U.S.C. § 158(a)(1). "When a district court reviews a bankruptcy court's decision, it functions as an appellate court and utilizes the same standard of review applied by federal court of appeals." *In re El Paso Apparel Group, Inc.*, 288 B.R. 757, 759 (W.D.Tex.2003). The district courts review questions of law *de novo*. *Id.* Questions of fact are reviewed under a clearly erroneous standard. *In re Dota*, 288 B.R. 448, 452 (S.D.Tex.2003). The facts and legal arguments are adequately presented in the briefs and record, and therefore, there is no need for oral argument. FED. R. BANK. P. 8012.

## Analysis

On appeal, Joseph contests the Bankruptcy Court's decision to obligate Joseph to pay Mary's attorney's fees. Joseph

---

1. Joseph contends in his brief submitted January 20, 2004, that Mary has an M.B.A. He also contends that Mary has a significant trust fund. This information is at odds with the Bankruptcy Court's findings. Since nothing in the record shows that the Bankruptcy Court prevented this information from being discovered earlier and no evidence establishes these allegations, the Court does not find the Bankruptcy Judge's findings clearly erroneous.

raises two issues: (1) whether the Bankruptcy Judge correctly allowed attorney's fees to be related to alimony, maintenance and support, effectively blocking Joseph's attempt to discharge his obligation through bankruptcy; and (2) whether the Bankruptcy Judge's analysis using 11 U.S.C. § 523(a)(5) was clearly erroneous in light of the further statutory addition of § 523(a)(15).

## Attorney's Fees

Joseph argues that the Bankruptcy Judge incorrectly classified his divorce obligation of attorney's fees as alimony, maintenance, and support. In dispute of this classification, Joseph argues: (1) that the attorney's fees are classified as a property division by the state court and both collateral estoppel and res judicata prevent the Bankruptcy Court from labeling attorney's fees as alimony, maintenance, and support; (2) that the attorneys seeking their fees do not have standing under § 523, which limits protection of obligations to spouses and children; and finally (3) that the Bankruptcy Court incorrectly balanced the interests of the parties.

■ The dischargeability of debt rules fall under 11 U.S.C. § 523. "The burden of proof is on the person who asserts nondischargeability of a debt to prove its exemption from discharge." *In re Pino*, 268 B.R. 483, 489 (Bankr.W.D.Tex.2001). The pertinent part of § 523(a)(5) states that an individual debtor may not discharge obligations from any debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record." 11 U.S.C. § 523(a)(5).

Joseph argues that the attorney's fees were awarded as part of the division of the community estate, not as a separate right of the parties to attorney's fees. Joseph concludes that since the divorce court ruled the attorney's fees were part of the division of the community estate, they should not be classified as alimony, maintenance, or support, and that the divorce court's holdings are protected by collateral estoppel and res judicata.

■ Joseph's assertion that bankruptcy courts are required to follow the language used by state courts is inconsistent with case law. "Since the 1970's, the determination of whether a debt is nondischargeable under this provision has been a matter of federal bankruptcy law, not state law." *Matter of Dennis*, 25 F.3d 274 (5th Cir.1994). "Bankruptcy courts must therefore look beyond the labels which state courts- and even parties themselves—give obligations which debtors seek to have discharged." *Id.* at 278. Thus, bankruptcy courts are not obligated to follow the labels made by divorce courts regarding obligations.

■ Concerning collateral estoppel and res judicata issues, the Fifth Circuit added, "parties and state courts, as a general rule, do not label obligations with federal bankruptcy standards in mind." *Id.* "Even if a state court reviews an issue which is similar to one created by the nondischargeability provision in the bankruptcy code, the state law concept will likely differ from the specific federal bankruptcy doctrine in question." *Id.* Thus, "only in limited circumstances may bankruptcy courts defer to the doctrine of collateral estoppel." *Id.* The application of collateral estoppel is relevant only when "the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question with the same *prima facie* elements as the bankruptcy issue . . . ." *Id.*

Joseph's argument concerning the state court's label of attorney's fees as "part of

the community estate" has no merit. As the Fifth Circuit explained, the Bankruptcy Court was under no obligation to label attorney's fees as a property division, even if the state court labeled it as such. Since Mary would be obligated to pay attorney's fees if the Bankruptcy Court opted to allow Joseph to discharge his debt, the attorney's fees are a form of support. Also, the collateral estoppel arguments concerning the state court's label is without merit because the issues decided in the divorce court does not fit into the limited exception. The divorce court did not determine attorney's fees based on the dischargeability issue, the divorce court simply relieved Mary of part of her attorney's fees to alleviate some of her financial burden caused by the divorce. Therefore, the state court's labels of attorney's fees did not preclude the Bankruptcy Court from characterizing the attorney's fees as alimony, support, or maintenance.

■ Joseph next argues that the attorneys seeking payment do not have standing. Joseph argues that since § 523 is limited to spouses and children, obligations sought by the attorneys are not protected from bankruptcy discharge. However, the attorney's fee obligation extends to attorneys seeking payment because the ultimate purpose of the proceeding is to provide support for the spouse or child. *Matter of Hudson*, 107 F.3d 355 (5th Cir.1997). In essence, the attorney's fees are a support to Mary because she is responsible for payment if Joseph is permitted to discharge them. Thus, attorney's are not precluded from enforcing rights to payment given them by divorce courts.

■ Joseph also argues that the Bankruptcy Court erred in weighing the factors involved in assessing attorney's fees as alimony, maintenance, or support. Concerning § 523(a)(5), the Fifth Circuit stated, "the attorney's fee award granted pursuant to a divorce decree does not elude discharge because it tangentially relates to an award of support and maintenance; rather the attorney's fee award is deemed nondischargable if the award itself reflects a balancing of the parties' financial needs." *Matter of Joseph*, 16 F.3d 86, 88 (5th Cir.1994). The interests of both parties must be balanced to decide if attorney's fees can be discharged through bankruptcy. The factors to balance include: (1) disparity in earning power of the parties; (2) their relative business opportunities; (3) the physical condition of the parties; (4) their probable future need for support; (5) the educational background of the parties; (6) and the benefits they would have received had the marriage continued." *Id.* at 88. By balancing these factors, the courts may find that the debt is "in the nature of alimony, maintenance, and support," and thus, the debt would not be dischargeable. *Id.*

■ The Bankruptcy Court weighed these factors and decided that Joseph could not discharge the attorney's fees. This Court finds no error in the Bankruptcy Court's analysis. After reviewing the facts, Mary is less capable of paying her attorney's fees than Joseph. Joseph has a much more lucrative job as a consultant with K–Swiss than Mary has with Mailbox, Etc. Also, it is conceivable that Joseph could be hired to consult for more shoe manufacturers, leading to the conclusion that his business opportunities are greater relative to Mary's. Although Mary has a trust fund and generous parents possibly willing to help her financially, those sources are not sufficient to support Mary. In addition, Joseph will have two incomes with his new spouse. The parties may have similar educational backgrounds, but Joseph has continued in his field while Mary has taken a hiatus of over fifteen

years. Also, Mary has been found to be clinically depressed, while Joseph claims no physical ailments. Finally, it can be assumed for the near future that Mary will be considerably worse off financially than she would have been had the marriage not fallen apart. Thus, because the attorney's fees are in the nature of support, the obligation is nondischargeable under § 523(a)(5).

## § 523(a)(15)

The second issue raised by Joseph is that the Bankruptcy Court used an outdated analysis to determine if attorney's fees are dischargeable under § 523. Joseph claims that the subsequent addition of § 523(a)(15) in 1994 changes the analysis that has been used both previously and subsequently by courts. Joseph argues that the Court should not use (a)(5)'s factor analysis but rather the totality of the circumstances test developed for (a)(15). Joseph contends that because Congress added (a)(15), the assessment of the debt obligation under (a)(5) should be controlled by what a state court determines is alimony, maintenance, and support, instead of the balancing test determining if the obligation was in the nature of support. However, Joseph offers no case law to support this novel interpretation. Because the Bankruptcy Court properly reviewed Joseph's contention under the guise of § 523(a)(5) rather than § 523(a)(15), Joseph's novel interpretation and argument to this Court are unfounded.

The legislature added § 523(a)(15) as part of the Bankruptcy Reform Act of 1994. *Matter of Whittaker*, 225 B.R. 131, 142 (Bankr.E.D.La.1998). Congress made the addition "in an attempt to lessen the chance that a divorce obligee's claim might slip through § 523(a)(5)'s cracks and be discharged unjustly." *Id.* at 142. The language of the statute supports this interpretation since a discharge will not discharge an individual debtor from any debt "not of the kind described in [ (a)(5) ] that is incurred by the debtor in the course of a divorce ...." 11 U.S.C. § 523(a)(15). Congress was attempting to eliminate dischargeability of divorce obligations, thus adding to what could not be discharged, not allowing for greater discharge. In addition, the Fifth Circuit has inferred that § 523(a)(15) was created specifically for obligations that traditionally did not fit under § 523(a)(5)'s requirement that an obligation be categorized in the nature of support. *See Matter of Gamble*, 143 F.3d 223, 225 (5th Cir.1998).

Thus, Joseph asks this Court to ignore the jurisprudence that has developed over the years concerning (a)(5) and only apply the test outlined in (a)(15). The Court declines this invitation because Congress did not add (a)(15) to abrogate the judiciary's understanding of dischargeability under (a)(5). Rather, Congress was attempting to fill a "crack" since many divorce obligations were being discharged under the (a)(5) analysis. Thus, the Bankruptcy Court properly determined that Joseph's obligation was not dischargeable.

## Conclusion

Based on the foregoing, the Bankruptcy Court's Memorandum Decision is AFFIRMED and this cause is DISMISSED.