In re Manuel NAZARIO III, Debtor.

Sheryl Nazario, Plaintiff,

v.

Manuel Nazario, Defendant.

Bankruptcy No. 97–11659.
Adversary No. 98–1015.

United States Bankruptcy Court,
W.D. Pennsylvania.

Jan. 15, 1999.

Brian M. Spaid, Franklin, PA, for Debtor.

William Pineo, Meadville, PA, for Sheryl Nazario.

### OPINION [1]

WARREN W. BENTZ, Bankruptcy Judge.

### Introduction

Manuel Nazario III ("Mr. Nazario" or "Debtor") filed a voluntary Petition under Chapter 7 of the Bankruptcy Code on October 31, 1997. His ex-spouse, Sheryl L. Nazario ("Sheryl") was listed as an unsecured creditor with a contingent claim in an unknown amount on the Debtor's bankruptcy schedules. There is no dispute that Sheryl's claim arises from a Marriage Settlement Agreement (the "Agreement") between Sheryl and the Debtor dated May 28, 1997. Sheryl timely filed the within COMPLAINT OBJECTING TO DISCHARGE OF DEBT under 11 USC § 523(a)(15). A trial/evidentiary hearing was held on October 1, 1998 and the matter is ripe for decision.

1. The within Opinion constitutes this Court's findings of fact and conclusions of law.

2. The Agreement specifically listed the Providian debt and an obligation to USAA Visa as obligations which the Debtor assumed. Correspondence from USAA carried both a Visa and a Mastercard logo. It now appears that this is a Mastercard debt. In either case, the obligation

### Facts

Debtor and Sheryl were married on December 18, 1978. They separated on June 22, 1996. They have four children, ages 13, 11, 8 and 20 months. The 8 year old resides with the Debtor. The remaining three children reside with Sheryl.

The Agreement was executed on May 28, 1997 and a divorce was granted on June 5, 1997. The Agreement provides that the Debtor will "assume and fully pay the debts of the marriage" and that the Debtor will "hold [Sheryl] harmless from the payment thereof and in the event of default shall defend her against all claims, including payment of her reasonable attorney fees." The Agreement further provides that the parties "agree that their respective obligations to pay the aforesaid marital debts are not dischargeable in bankruptcy" and that the "Husband [Mr. Nazario] acknowledges that he has consulted a bankruptcy attorney regarding the possibility of filing for bankruptcy given his current employment status and potential inability to pay his obligations."

Five months after executing the Agreement, Mr. Nazario filed his bankruptcy Petition. Certain marital creditors including Providian, with a balance of approximately $15,000, and USAA Credit Card Services, with a balance of approximately $2,700, have contacted Sheryl regarding payment.[2]

Sheryl lives with her mother and her three children in New Mexico. She attends New Mexico State University and anticipates graduation with a degree in accounting in December, 2000. Sheryl's tuition is paid by grant except for summer sessions. For the summer sessions and for books and supplies, Sheryl incurs an expense of $116 per month. She is in a work/study program and receives payment for work in the amount of $252.36 per month. Debtor pays Sheryl $767 per month in child support,[3] which gives Sheryl total income of $1,019.36.

arose during the marriage and is an obligation for which the Debtor agreed to hold Sheryl harmless.

3. Both parties are presently seeking modification of the support amount. Sheryl is seeking an increase and the Debtor seeks a decrease since one of the four children now resides with him.

Sheryl pays no rent or utilities. She drives her mother's car and pays only for gas and maintenance. Even with this assistance, she is unable to meet her minimal monthly expenses:

| | |
|---|---|
| Rental (furniture storage) | $ 65 |
| Telephone | 45 |
| Food | 500 |
| Clothing | 30 |
| Laundry | 10 |
| Medical/Dental | 104 |
| Transportation | 75 |
| Charitable Contributions | 125 |
| Life Insurance | 70 |
| Auto Insurance | 45 |
| Credit Card Payments | 45 |
| Barber | 40 |
| College Expenses | 116 |
| | $1,270 |

Sheryl relies heavily on her mother for assistance. Her mother paid her moving expenses to New Mexico, has paid her attorney fees and for associated travel expenses, and helps with the purchase of the children's needs. Sheryl presently owes her mother $10,800 which she expects to repay after college graduation. Sheryl presently has $3,500 outstanding in student loans and will need to borrow additional monies to finish school.

The Debtor remarried on August 9, 1997. He resides with his new wife, Mary ("Mary") and his son, Trevor. Mary has a daughter who is a college student and spends weekends and holidays at home. Debtor has a Bachelor of Science Degree in Criminology/Technology and a Master's Degree in Management.

Debtor works with delinquent juveniles. He was previously employed as a Deputy Chief Program Master with Vision Quest at a salary of $38,000 per year. At the time of his marital separation in June, 1996, he was employed in Pennsylvania. In December, 1996, he was transferred to the Vision Quest facility in Oklahoma where he worked until his employment ended in April, 1997. The Agreement was executed on May 28, 1997, while the Debtor was unemployed. Debtor testified that at the time of execution of the Agreement, he expected to obtain another position with the State of Oklahoma at a salary of $50,000 per year which fell through a few weeks after the Agreement was signed.

Sheryl's divorce attorney prepared the initial drafts of the Agreement which included the language that Mr. Nazario's obligations under the Agreement were not dischargeable in bankruptcy. Mr. Nazario objected to that language. His attorney advised him that such a clause was not valid in a bankruptcy case. Sheryl's attorney was also advised. When Sheryl's attorney insisted that it remain, Mr. Nazario's attorney added the second clause which states that Mr. Nazario had already consulted bankruptcy counsel. There is no evidence that Sheryl was aware of the unenforceability of the nondischargeability provision.

In July, 1997, Debtor suffered a medical problem which resulted in substantial medical expense. In August, 1997, Debtor obtained new employment in Pennsylvania with a different child care facility where he presently remains employed at an annual salary of $30,000. After deductions for health insurance and child support, the Debtor's monthly net income is $1,031.53.

Debtor's present wife, Mary, is a high school graduate with some management training. She works two jobs, earning $660 per month as a pharmacy technician at Rite–Aid and $470 per month from a newspaper route, after expenses. The family combines their income and expenses. With Mr. Nazario's income, the total net family income is $2,160.

The Debtor and Mary present a list of monthly expenses of $3,279.70 plus child support (deducted from Debtor's pay before net income) and counseling expenses for Debtor's son, Trevor. It is clear that they are living beyond their means and robbing Peter to pay Paul. The listed expenses with explanation are as follows:

| | | |
|---|---|---|
| Mortgage | $ 348.13 | Home purchased by Mary in 1996 before meeting Debtor |
| Bank loan | 217.52 | Second mortgage to purchase auto, to help Mary's daughter with college expenses, for home improvement and for airfare for Debtor's children to visit |

| | | |
|---|---|---|
| Car payment | 221.44 | Debtor's leased auto |
| Electric | 75.00 | |
| Gas | 200.00 | $100 current, $100 on arrears |
| Water | 52.75 | |
| Cable | 31.15 | |
| Furniture | 70.00 | Purchased by Mary in 1995, $1,000 balance |
| Pool maintenance | 75.00 | |
| Van payment | 72.34 | Vehicle bought with second mortgage loan. Borrowed $800 on vehicle for Mary's daughter's school expenses. |
| Trevor schooling | 202.38 | Counselor said Trevor needed private schooling |
| Attorney's fees | 150.00 | Mary has a balance of $1,000 and Debtor owes $3,000–4,000 |
| Medical | 65.00 | |
| Food | 300.00 | |
| Clothing/personal | 100.00 | |
| Auto insurance | 417.00 | 3 vehicles, includes Mary's daughter |
| Auto fuel | 200.00 | Debtor's employment is 50 miles from home, and for paper route |
| Auto repair | 50.00 | |
| Homeowner's insurance | 26.58 | |
| Real estate taxes | 62.50 | |
| Mary's daughter's school expenses | 342.91 | |
| | $3,279.70 | |

While some of the above expenses may be temporary (gas arrears) and some might be considered extravagant (pool maintenance), and some might be Mary's expense (insurance, vehicle and school expense for Mary's daughter), even when cut to the minimum or eliminated, the Debtor and Mary will have to struggle to make ends meet on their current incomes.

### Discussion

11 USC § 523(a)(15) governs the dischargeability of debt which arises from a separation agreement that is in the nature of a property settlement.

The party who seeks a finding that an obligation is nondischargeable under

§ 523(a)(15) bears the burden of proof to show that the obligation at issue arises within the discharge exception for divorce-related debt that is not support, maintenance or alimony. *In re Crosswhite*, 148 F.3d 879 (7th Cir.1998); *In re Gamble*, 143 F.3d 223 (5th Cir.1998). Once the Plaintiff meets that burden, the burden shifts to the Debtor to prove the applicability of either of two statutory exceptions to nondischargeability. *Id.*

If the obligation arises from a marital property settlement, it is not discharged unless the Debtor proves that:

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

11 USC § 523(a)(15).

Here, the parties agree that the obligation at issue is the type of obligation which is governed by § 523(a)(15). Thus, the burden is on the Debtor to prove that one of the two exceptions apply.

■ We find ourselves in a difficult situation. The evidence is clear that neither party has the ability to pay the debt at issue from their income or property not reasonably necessary for maintenance and support. Forcing either party to pay the debt results in an equivalent detrimental consequence to either party. Thus, it appears that the Debtor has met his burden of proof and the obligation in question should be discharged.

However, the Court has grave concerns about allowing a debtor to enter into a marital settlement agreement whereby the debtor agrees to make payment to a former spouse or to hold the former spouse harmless from certain obligations and then to shortly thereafter file a bankruptcy Petition and seek to discharge the obligations created by the marital settlement documents. At the time of the marital settlement, it is possible that in exchange for the agreed payment to the former spouse or in exchange for the agreement to hold the former spouse harmless from certain obligations, the debtor received or was allowed to keep a greater share of the marital property. It then seems unfair to allow a debtor to discharge his obligation in bankruptcy.

Although not raised by Sheryl, we question whether the Debtor signed the Agreement with the then-present intent of not performing—of seeking a bankruptcy discharge. Other courts have addressed the issue under § 523(a)(2)(A) which excepts from discharge debts "to the extent obtained by false pretenses, a false representation, or actual fraud." *In re Shea*, 221 B.R. 491 (Bankr. D.Minn.1998); *In re Arnott*, 210 B.R. 651 (Bankr.S.D.Fla.1997).

■ To prevail under § 523(a)(2)(A), a plaintiff must prove, by a preponderance of the evidence, the following:

(1) the debtor made a false representation with the purpose and intention of deceiving the creditor;

(2) the debtor knew the representations were false at the time made;

(3) the creditor relied on such representations;

(4) the reliance was reasonably founded; and

(5) the creditor sustained a loss as a result of the representation.

*Id.*

At the time the Debtor signed the Agreement, he was unemployed and had already discussed the possibility of bankruptcy with an attorney. The Agreement provides that his obligations to Sheryl are not dischargeable in bankruptcy. When the Debtor signed the Agreement, he had been advised by counsel and knew that such a provision was unenforceable in a bankruptcy case.

Sheryl testified that she relied on the provision; that in exchange for Debtor's agreement to hold her harmless from the marital debts, he received a greater share of the marital assets including his 401K plan and a mutual fund account; and that her domestic

relations' attorney advised her that the provision meant the Debtor could not discharge her claims in bankruptcy.

 The Agreement was drafted by her attorney; Debtor's attorney advised Sheryl's attorney that the clause was not enforceable, yet she insisted it remain. To alert all parties of the possibility of bankruptcy, Debtor's counsel added language to the Agreement making it clear that he had consulted a bankruptcy attorney of his potential inability to pay his obligations. If, as Sheryl testified, her attorney informed her that such a clause meant that the Debtor could not discharge his obligations to Sheryl, then her entry into the Agreement was based on Sheryl's mistake of the law.

A mistake of law is not a basis for avoiding the Agreement nor obtaining some other remedy. *Simeone v. Simeone,* 525 Pa. 392, 581 A.2d 162 (1990); *In re Estate of Zeigler,* 381 Pa. 436, 113 A.2d 271 (1955). Likewise, her mistake as to the law should have no bearing on the outcome of this bankruptcy matter. We therefore must disregard her reliance on the clause in the Agreement which provided that his obligations were not dischargeable in bankruptcy.

We also conclude that when Debtor signed the Agreement on or about May 28, 1997, he then believed he would obtain the job in Oklahoma with a $50,000 annual wage. If he got the $50,000 job, then he could have met his obligations under the Agreement, even if he were forced into bankruptcy by his other debts. His inability to pay the obligations of the Agreement was primarily a result of the changed circumstance that he didn't get the job. (If the Debtor, on May 28, 1997, believed that he would not get the Oklahoma job, then he was guilty of a false representation in signing the Agreement, because he would have then known that he could not fulfill his obligations under the Agreement and that he would be seeking to discharge them in bankruptcy. There is no evidence that the Debtor's failure to get the Oklahoma job was other than unexpected.)

Accordingly, since Debtor has met his burden of proof that he falls within the exception to nondischargeability under § 523(a)(15)(A),

the Debtor's obligations to Sheryl under the Agreement will be discharged.

An appropriate Order will be entered.