**In re Robert Anthony MARTINEZ, Debtor.**

**Shirley Laverne Will, Plaintiff,**

v.

**Robert Anthony Martinez, Defendant.**

**Bankruptcy No. 98–61200–LEK–7.
Adversary No. 98–6053.**

United States Bankruptcy Court,
W.D. Texas,
Waco Division.

Feb. 25, 1999.

Plaintiff Shirley Laverne Will ("Plaintiff" or "Will") and Defendant Robert Anthony Martinez ("Defendant," "Debtor," or "Martinez") both appeared in person and through counsel. The court took the matter under advisement at the conclusion of the hearing.

The parties did not dispute and the court finds that this is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The following represents this court's findings of facts and conclusions of law.

This Plaintiff and Debtor have married and divorced one another two times. In the second divorce, the Debtor incurred an obligation to maintain a $50,000 life insurance policy naming Plaintiff as beneficiary and also agreed to pay a portion of each monthly mortgage payment on the house that was awarded to her in the divorce. These obligations form the basis of the dispute in this case.

The parties have framed the issues in this case as: (1) whether the Debtor's obligations are properly characterized as support, maintenance, and/or alimony, and therefore non-dischargeable under § 523(a)(5) of the Bankruptcy Code, and (2) if not, whether the Debtor has the income or property necessary to fulfill those obligations or whether fulfilling them would be a greater hardship on him than a benefit to her, such that the obligations are non-dischargeable under § 523(a)(15). Both the Plaintiff and the Debtor testified on these issues at the trial. After careful consideration of the evidence and arguments presented and the applicable law the court rules as follows.

James Omar Cure, Temple, TX, for Shirley Laverne Will.

William B. Phillips, Killeen, TX, for Robert Anthony Martinez.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF JUDGMENT

LARRY E. KELLY, Chief Judge.

On January 20, 1999, came on to be heard the above-styled and numbered cause.

### BACKGROUND

The Debtor and the Plaintiff were first married in November, 1962. At the time they divorced in September of 1985, the Plaintiff was entitled to a one-half interest in the Debtor's military retirement benefits accrued during the marriage. She testified that, against her attorney's advice, she gave up her right to a portion of the Debtor's military retirement benefits, and instead agreed to $300 per month in contractual alimony from the Debtor. He testified his

purpose in paying the $300 per month was primarily as support of his daughter, who was no longer a minor at the time of the divorce.

The Plaintiff and the Debtor remarried only six months later, on April 15, 1986. Her testimony was that the remarriage was for convenience: to obtain a VA loan together to purchase a home that would ultimately be their legacy to their children. He testified that in addition to that purpose, they remarried so that she might use his military benefits to obtain some dental and/or medical care. They agree that they lived together after they married for only three days before he was transferred by the Army out of state, where he took up residence with his now second wife.

On April 21, 1987, the Plaintiff and the Debtor purchased a house in Killeen, Texas [the "House"], borrowing $70,700 on a VA loan to finance it, and making only a $1 downpayment. The House was titled in the Plaintiff's name only. Both are named as makers of the note. The monthly mortgage payment is $763.83. Plaintiff and her son and his three children currently live in the House. There was no evidence of the value of the House, or whether there is any equity in it.[1]

In October of 1987, six months after the purchase of the House, the Plaintiff and the Debtor divorced for a second time. This time the Plaintiff received (in addition to various items of personal property) the House. Under the Agreement incident to the second divorce, designated as "a part of the division of the estate of the parties," the Debtor is obligated to make all of the mortgage payments on the House and to maintain a life insurance policy with a death benefit of $50,000 and of which she is the irrevocable beneficiary.

The Debtor paid $600 of each $763.83 mortgage payment until July of 1997, when he stopped paying at all. Using her son's rent payment of $500 per month and her other income, the Plaintiff has been making up the shortfall. The debtor became ineligible for the military life insurance policy he had, and has been able to replace it with a policy with only a $35,000 death benefit. There was no evidence as to the amount of the premiums on this policy or on its status.

At the time of the second divorce, the Debtor was 45 years old; the Plaintiff was 43. His gross income was approximately $2,300 per month, and hers was $1,100 per month. His health, and apparently hers, was fine. Except for when their children were born and short periods of time after moving, she had been employed full-time all of their married life.

In July of 1997, more than ten years after the second divorce, the Debtor was diagnosed with cancer of the pelvic bone. He quit working in 1997, and is unable to return to work. His monthly income consists of $999 (gross) in Social Security payments, $313 in military disability payments and military retirement of approximately $1,000. His income and that of his current wife is consumed in the payment of medical expenses and other living expenses. His wife is not expected to remain employed for much longer, since he expects to need her full-time assistance soon because of his health problems. He no longer can walk any distance without debilitating pain and needs assistance in almost every aspect of his life. He has accrued approximately $1 million in medical bills for the treatment of his cancer. His cancer may have recurred, and he was scheduled for further testing immediately after the trial of this case.

Based on the Debtor's description of monthly expenses being approximately equal to his monthly income of $2,300, the court finds that such expenses are reasonable and necessary. His property consists of his share of the house owned by him and his second wife and miscellaneous but minimal personal property. His health insurance under COBRA provisions expires in September, 1999, although he is eligible for free medical care through the Veterans Administration.

1. Counsel for the Plaintiff did state that there was no equity in the House, but no evidence was introduced on the issue.

The Plaintiff is employed as a commercial insurance representative with gross wages of about $1430 per month[2] and net wages of $265 per week. She testified she was unable to pay on her Sears account balance of $4,744 because she has been paying her mortgage payments instead. Her expenses (excluding the mortgage payment on the House) include utilities of at least $300 per month (much more in the summer when electricity alone is approximately $300 per month) and car insurance of $600 per year. The court finds her expenses are reasonable and necessary as well.

## DISCUSSION

### Whether the Debtor's Obligations Are Non–Dischargeable as Support, Maintenance or Alimony

Section 523(a)(5) provides:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\*     \*     \*     \*     \*     \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the na-

ture of alimony, maintenance, or support. . . .

The general rule is that "[t]he burden is on the person who asserts nondischargeability of a debt to prove its exemption from discharge." *Benich v. Benich (In re Benich),* 811 F.2d 943, 945 (5th Cir.1987) (footnotes omitted). Thus the Plaintiff in this case must show by a preponderance of the evidence that the Debtor's obligation is in the nature of alimony, maintenance and/or support so as to make the debt non-dischargeable under § 523(a)(5). *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (holding that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard).

The Fifth Circuit Court of Appeals on several occasions has provided guidance on the analysis applicable to deciding whether a debt falls within § 523(a)(5). In *Joseph v. J. Huey O'Toole, P.C. (In re Joseph),* 16 F.3d 86, the Court stated the general rules:

'Whether a particular obligation constitutes alimony, maintenance, or support within the meaning of this section is a matter of federal bankruptcy law, not state law.' This premise proves particularly important in states such as Texas where no permanent alimony exists. In Texas, 'support in the future can play a significant role in the divorce court's property division and . . . what may appear to be a mere division of assets may in fact . . . contain a substantial element of alimony-substitute, support or maintenance, however termed.' Thus, [Texas bankruptcy courts] must place substance over form to determine the true nature and purpose of the award, regardless of the label used.

*Id.* at 87–88 (footnotes and cites omitted).

What sorts of factors Texas bankruptcy courts should review in deciding whether a divorce obligation constitutes alimony, maintenance, or support has also been the subject of several opinions of the Fifth Circuit.[3] *See e.g. Dennis v. Dennis*

---

2. She testified she earned $8.25 per hour. ($8.25 × 40 hrs per week × 52 weeks ÷ 12 months = $1430 per month.)

3. *See also Holland v. Holland (In re Holland),* 48 B.R. 874, 876 (Bankr.N.D.Tex.1984) (Brister, J.), where the court stated:

The factors to be considered in determining whether the debts owed to a former spouse are

*(In re Dennis)*, 25 F.3d 274, 279 (5th Cir. 1994); *Joseph v. J. Huey O'Toole, P.C. (In re Joseph)*, 16 F.3d 86, 88 (5th Cir.1994); *Benich v. Benich (In re Benich)*, 811 F.2d 943, 945 (5th Cir.1987); *In re Nunnally*, 506 F.2d 1024, 1026 (5th Cir.1975). "The considerations include the parties' disparity in earning capacity, their relative business opportunities, their physical condition, their educational background, their probable future financial needs, and the benefits each party would have received had the marriage continued." *Dennis*, 25 F.3d at 279 (citing *Joseph*, 16 F.3d at 88). These factors are considered as of the date of the divorce, not when the dischargeability action is decided. *Calhoun v. Calhoun (In re Calhoun)*, 92 B.R. 686, 687 (Bankr.W.D.Tex.1987) (Ayers, J.).

■ This court recognizes that several of the factors indicative of a property settlement appear to be present in this case. Neither party has an educational background far superior to the other's. While the Debtor's income at the time of the second divorce was higher than the Plaintiff's, they were not hugely disproportionate. Neither were there great disparities at the time of the divorce between the Debtor's and the Plaintiff's physical conditions or the probable future financial needs of each. In addition, the Debtor's obligation to pay the mortgage payments does not end with the Plaintiff's remarriage or even with her death. It is a long-term installment obligation. "The fact that the obligation ends with the remarriage of the recipient spouse or the death of either spouse or that the obligation is to be paid in installments over a long period of time indicate that the obligation is for support rather than part of a property settlement." *Carlile*

v. Fox *(In re Fox)*, 5 B.R. 317, 321 (Bankr. N.D.Tex.1980) (Flowers, J.).

In this case, the parties provided in their Agreement incident to the second divorce that the Debtor's obligations to pay the mortgage on the House and maintain the insurance was part of the "property settlement". Exhibit P–2. Both parties testified that their intent in purchasing the House and incurring the VA loan was as an investment—something the Plaintiff and the Debtor could leave for their children. The Debtor testified he never considered his obligation to pay the mortgage to be support of his ex-wife. She testified the purpose of the life insurance policy was to provide for funds to pay off the mortgage on the House should he die.[4] This characterization by the parties of their intent supports a determination that the Debtor's obligations arise out of a property division and are not alimony, maintenance or support.

■ However, the Plaintiff's and the Debtor's characterization of their intent regarding the original purchase of the House is not determinative of its subsequent award to the Plaintiff and the allocation of the mortgage debt to the Debtor. Moreover, like the labels the parties or the divorce courts give debts arising out of divorces, the Plaintiff's and the Debtor's testimony on what they meant, while relevant, is not conclusive. *Joseph*, 16 F.3d at 88. In *Benich*, the Court pointed out the trial court's duty to go beyond form to the substance of the matter:

> While the intention of the parties is the ultimate question, even the uncontradicted testimony of one of the spouses is not decisive. The trial court is entitled to weigh the credibility of the witness, the

---

non-dischargeable alimony, maintenance or support include

1. Whether children were born of the marriage;
2. The parties respective levels of income;
3. Whether there was a division property and a division of debts relating thereto;
4. Whether the former spouse had shown a need for support at the time of divorce;
5. Whether the former spouse was shown, at the time of divorce, to have suffered in the job market or was otherwise disadvantaged because of any dependent position held in relation to the debtor during the marriage;
6. The age and health of the former spouse;

7. The economic disparity between the parties; and
8. Whether the terms of the settlement agreement indicated that the obligation was support rather than a property division.

No one of the above factors is determinative of the issue and the totality of the circumstances must be considered.

4. The court notes, however, that the Agreement does not provide that the Debtor is released from the obligation to maintain the policy when the mortgage on the House is fully paid.

worth of the testimony when weighed against the language of the agreement, the actual situation of the parties at the time when the agreement was made, and any other evidence that may help to determine the reality of the nature of the payments. *Benich,* 811 F.2d at 945–46. *See also Holland v. Holland (In re Holland),* 48 B.R. 874, 876 (Bankr.N.D.Tex.1984) (Brister, J.) ("The finding of intent, however, does not control the ultimate issue and the second determination is whether the [debt] was actually in the nature of support ... that is, whether the terms of the agreement or decree appear to be designed to satisfy a duty of support.... Thus the Court must inquire whether the [debt] has the effect of providing the support necessary to ensure that the daily needs of the former spouse and child are satisfied.").

■ In this case, the Debtor's payment of the Plaintiff's mortgage payment (or even of a portion of them) clearly provides her with needed support. Without it, she would be unable to pay for the House (although it is not entirely clear that she could not afford other, less expensive, housing for herself without the Debtor's contribution). Even so, it was this particular investment in this house that each of them intended be made, with the ultimate goal of giving the House to their children. It is clear from the evidence that the Plaintiff could not have purchased or maintained this House without the Debtor's obligation to support her with the making of the monthly mortgage payments.

Plaintiff argues in this case that, as in *Benich,* the Plaintiff gave up her right to a portion of his retirement benefits in exchange for the Debtor's agreement to make the insurance and mortgage payments, and that therefore they were support. The trial court in *Benich,* 811 F.2d 943 (5th Cir.1987), held the debt to be support, finding it

persuasive that the payments were intended as a substitute for any right [the plaintiff] would otherwise have had in [the debtor's] future military retirement benefits, for she had agreed not to proceed against these benefits in exchange for her ex-husband's agreement to provide the payments.... Had she retained her property right in the retirement benefits, her interest in those payments would not have been defeated by [the debtor's] bankruptcy, for the retirement benefits would not have been an asset of the bankruptcy estate.

*Id.* at 945. Unlike in *Benich,* however, the Plaintiff in this case did not give up her rights to the Debtor's retirement benefits in exchange for the payments in question, which arise out of the second divorce. She gave up any right to his retirement payments (other than those accrued during the eighteen-month long second marriage) in the first divorce, so that it was his separate property when they remarried and remained so during their second marriage. As his separate property at the time of the second divorce, it could not have been divided by the divorce court. *See Cameron v. Cameron,* 641 S.W.2d 210 (Tex.1982) (the divorce court cannot divest either party of his or her separate personal property); *see generally* Tex. Family Code § 7.001 (Vernon 1998) ("In a decree of divorce or annulment, the court shall order a division *of the estate of the parties* in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." *Emphasis added.*). In *Workings v. Workings,* 700 S.W.2d 251, 254 (Tex.App.—Dallas 1985, no writ), the relevant facts were almost identical to those of this case, and the court held that if there was an agreement in the first divorce to award the husband's military disability retirement benefits to the husband, then those benefits became his separate property, which could not be divided in the second divorce but, rather, were properly retained by him as his separate property. Thus, the Plaintiff could not have given up rights she did not have in the retirement benefits "in exchange for" the Debtor's obligations to pay the mortgage and the insurance premiums.

Of critical importance to this court's decision is that there does not appear to have been any significant amount of community property to divide at the time of the second divorce in this case. Of course, property possessed by either spouse during or upon the dissolution of a marriage is presumed to belong to the community. *Cockerham v. Cockerham,* 527 S.W.2d 162, 167 (Tex.1975).

That presumption is rebuttable, however, and is overcome here where both parties testified and the Agreement incident to the second divorce reflects that only minimal community property, other than the House, existed at the time of the second divorce. The second marriage lasted only eighteen months, and the Debtor did not reside with the Plaintiff for all but three days of that period. The Plaintiff was awarded a House that had no equity and only minimal personal property in her possession. The Debtor was awarded only minimal personal property in his possession. The total amount of community property awarded to the Debtor in the second divorce does not appear to be so disproportionate to the amount of community property awarded to the Plaintiff that imposing on him the obligations to pay the mortgage and the insurance premiums should be construed as a way of equalizing the property division. Since the Debtor did not receive community property at all comparable to the obligations imposed on him, the "reality of the nature" of those obligations cannot be that they were a part of the property settlement, notwithstanding their characterization by the parties.

If not part of the property settlement, the Debtor's obligations can only be a support or maintenance obligation.[5] Therefore, and based on all of the foregoing, the court finds that the Plaintiff has met her burden of proof of showing that the debts in question are ones for support, maintenance or alimony, and therefore are non-dischargeable under § 523(a)(5). For this reason the court does not rule on the alternative grounds under § 523(a)(15).

---

5. If the court had found the Debtor's obligations to be part of a property settlement, it would have found that they were dischargeable under § 523(a)(15). That section provides:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> \* \* \* \* \* \*
>
> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor....

The non-debtor/plaintiff has the initial burden of showing that § 523(a)(15) is applicable to the debt in question, whereupon the debtor/defendant has the burden of proving that one of the exceptions of (a)(15)(A) or (B) applies to take it out. *Gamble v. Gamble (In re Gamble)*, 143 F.3d 223, 226 (5th Cir.1998).

The Debtor's situation appears to be grave. Based on the evidence, it appears that he does not have the ability, after using his income and his property to pay his reasonable and necessary expenses, to continue to make the payments on the House, or pay the premiums on the insurance, and thus has satisfied § 523(a)(15)(A).

The court is of the opinion that the Debtor in this case has also satisfied subsection (B) of § 523(a)(15). "[A]n assessment of benefit and detriment under the second exception [in § 523(a)(15)(B)] implicates an analysis of the totality of the circumstances, not just a comparison of the parties' relative net worths." *Gamble v. Gamble (In re Gamble)*, 143 F.3d 223, 226 (5th Cir.1998) (citations omitted).

This is one of those sad cases where neither party can afford to pay the debts in question. Balancing the benefit to the Debtor if they are not discharged, with the harm to the Plaintiff if they are, is extremely difficult at best. Whether or not this court were to find the debts to be non-dischargeable, the reality is that, since the Debtor clearly does not have an ability to pay, the Plaintiff will almost undoubtedly never collect. The situation is similar to that in *Nazario v. Nazario (In re Nazario)*, 228 B.R. 394 (Bankr. W.D.Pa.1999), where the court remarked:

> We find ourselves in a difficult situation. The evidence is clear that neither party has the ability to pay the debt at issue from their income or property not reasonably necessary for maintenance and support. Forcing either party to pay the debt results in an equivalent detrimental consequence to either party. Thus, it appears that the Debtor has met his burden of proof and the obligation in question should be discharged.

*Id.* at 398. Considering all of the evidence presented, in light of the allocation of the burden of proof, this court believes that under the totality of the circumstances in this case the benefit to the Debtor that would result from discharging the debts in question outweighs the detrimental consequences to the Plaintiff from such discharge.

### CONCLUSION

The court finds and concludes that the Debtor's obligations to the Plaintiff to maintain a life insurance policy and to make the mortgage payments on her House are non-dischargeable. A separate judgment based on these findings and conclusions shall be entered contemporaneously herewith.