**In re Daniel W. KESSEL, Debtor.**

**Suzette C. Kessel, Plaintiff,**

v.

**Daniel W. Kessel, Defendant.**

**Bankruptcy No. 96–62868.**
**Adversary No. 00–6002.**

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

April 20, 2001.

Toby C. Easley, Houston, TX, for plaintiff.

William Sheehy, Wilson, Sheehy, Knowles, Robertson & Cornelius, Tyler, TX, for defendant.

### MEMORANDUM OF DECISION

BILL G. PARKER, Bankruptcy Judge.

This matter came before the Court for trial of the Complaint of the Plaintiff, Suzette C. Kessel ("Plaintiff") for a determination of whether a debt owed to her by the Defendant Debtor, Daniel Kessel ("Defendant") is dischargeable. The Plaintiff con-

tends that the debt is nondischargeable as a debt arising from a divorce decree and owing to a spouse, former spouse, or a child of the debtor, for alimony to, or maintenance for, or support of such spouse or child pursuant to 11 U.S.C. § 523(a)(5). At the conclusion of the trial, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[1]

## Background

Suzette and Daniel Kessel were married in 1976. At the time of the marriage both were in college. However, following their marriage, the Plaintiff relinquished her college career and obtained employment at a bank in order to provide financial support for the couple as the Defendant, Mr. Kessel, pursued a degree in veterinary medicine. The Kessels already had one child.[2] A second child, Jessica, was born to the couple in 1978. A third child, Charles, would be born in 1983.

By 1982 the Defendant had obtained his license to practice veterinary medicine and had opened a veterinary clinic in Alto, Texas. After the clinic opened, the Plaintiff left her job at the bank and began working as the sole assistant at the clinic. In an effort to increase the profitability of the family business, Ms. Kessel never took a salary for her work at the clinic.

Over the next thirteen years, the Plaintiff worked at the clinic alongside her husband. However, marital problems eventually arose and the Defendant filed for divorce. On February 24, 1995, a Final Decree of Divorce was entered with the agreement of the parties by the County Court at Law of Cherokee County, Texas. According to the parties' agreement, though both parents were named as joint managing conservators, the two minor children, Jessica and Charles, were placed in the care and custody of the Plaintiff and the Defendant agreed to make child support payments for their benefit in the amount of $575.00 per month.[3] The Defendant received what the parties perceived to be the most valuable marital asset, the veterinary clinic,[4] whereas the Plaintiff received the family's house.[5] The agreed divorce decree further provided as follows:

### Alimony

The Court finds that Petitioner and Respondent have entered into the following agreement regarding alimony. The Court hereby approves the following agreement:

**Purpose and Intent of Article.** Petitioner [Daniel Kessel] shall provide a continuing measure of support for SUZETTE C. KESSEL, Receiving Party,

---

1. This Court has subject matter jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The Court is authorized to enter a final judgment in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I) and (O).

2. This child had reached majority by the time the Kessels divorced and no other information regarding this child was provided to the Court.

3. None of the claims in this adversary proceeding relate to this child support obligation.

4. The parties both confirmed at trial that they thought the clinic was worth $100,000.00 at the time of the divorce. However, the basis for this valuation was never clearly articulated by either party. While the Defendant acknowledged that they had never really financially evaluated the business, the Plaintiff testified that the clinic had a gross income of $176,000.00 the year prior to the divorce.

5. The parties further confirmed that they believed that they held an equity of $30,000.00 in their house at the time of the divorce. However, the Plaintiff ultimately realized only $5,000.00 from its sale in 1997.

after divorce. These support payments undertaken by DANIEL WESLEY KESSEL, Paying Party, are intended to qualify as contractual alimony as that term is defined in section 71(a) of the Internal Revenue Code of 1985 ("the Code"), as amended, and are intended to be includable in the gross income of the Receiving Party under section 71(a) of the Code and deductible by Paying Party under section 215(a) of the Code. All provisions of this article will be interpreted in a manner consistent with that intention.

**Contractual Obligations.** This alimony obligation undertaken by Paying Party is contractual in nature and is not an obligation imposed by order or decree of court.

**Contingencies.** DANIEL WESLEY KESSEL will pay to SUZETTE C. KESSEL $500.00 per month as and for alimony. These payments will be payable monthly, on or before the 15th day of each month, beginning on the first such day after the date of divorce in this cause, and continuing for a period of 30 months.

In addition, DANIEL WESLEY KESSEL will maintain, as additional alimony for the benefit of SUZETTE C. KESSEL, the existing health insurance coverage for SUZETTE C. KESSEL, said coverage to continue for a period of 30 months from the date of divorce in this cause.

DANIEL WESLEY KESSEL will also pay directly to SUZETTE C. KESSEL, as additional alimony for the benefit of SUZETTE C. KESSEL, the following:

1. The monthly mortgage on the residence herein awarded to SUZETTE C. KESSEL, said payments to continue until CHARLES RORY KESSEL graduates from high school.[6]

2. The monthly payment due to AMERICAN SAVINGS in the amount of $239.22 for siding on the residence herein awarded to SUZETTE C. KESSEL, said note being secured by lien as described in instrument recorded in Volume 1133, Page 162, Land Records of Cherokee County, Texas, until paid in full.

3. Premium for insurance coverage and all ad valorem taxes on the residence herein awarded to SUZETTE C. KESSEL, said payments to continue until CHARLES RORY KESSEL graduates from high school.

4. The monthly mortgage payment due on that certain promissory note executed by the parties on June 7, 1991, in the original amount of $10,000.00, payable to FIRST STATE BANK, Rusk, Texas, until paid in full.

5. The monthly payment due on debt owed FREDONIA STAE [sic] BANK, Alto, Texas, in the amount of $209.74, which debt is secured by a lien on the 1989 Volkswagen motor vehicle, until paid in full.

(Ex. 1 at p. 22–23).

Suffice to say, the Defendant was not diligent in making all of the payments due to or for the benefit of the Plaintiff under the terms of the divorce decree. By his own admission and the demonstrative proof presented, the Defendant had made, as of the time he sought bankruptcy protection under Chapter 13 of the Bankruptcy Code on November 6, 1996:(1) only three of the seventy-four (74) mortgage payments; (2) only three of the thirty (30) monthly payments of $500.00; and (3) in-

---

6. The monthly mortgage payments were $715.00 and the parties anticipated that Charles Kessel would graduate from high school in May, 2001, seventy-four (74) months after the entry of the decree.

termittent payments on the automobile note to Fredonia State Bank sufficient to reduce the balance owing to $900.00.

Upon the filing of the Defendant's bankruptcy case, the Plaintiff was listed in the schedules as a general unsecured creditor. After receiving notice of the bankruptcy case, the Plaintiff timely filed an unsecured proof of claim in the amount of $77,910.88 based upon the obligations set forth in the divorce decree and the claim was so treated in the proposed Chapter 13 plan. No objection was filed to the Plaintiff's claim and the Defendant's Chapter 13 plan was confirmed on June 2, 1997.

On February 8, 2000, the Chapter 13 Trustee issued a Notice of Plan Completion, signifying that the Defendant had completed all the payments required under his confirmed plan and a discharge order was subsequently entered pursuant to 11 U.S.C. § 1328(a) on February 22, 2000.[7] Shortly after the Defendant's discharge was entered, the Chapter 13 Trustee filed his "Final Report and Account" in which he represented that the Plaintiff had been paid the sum of $3,190.18 on her claim through the Defendant's Chapter 13 plan. The Plaintiff did not object to the Trustee's Final Report and Account.

After the Defendant's discharge was entered, the Plaintiff filed the present adversary proceeding for a declaration that the debt owed by the Defendant arising from the divorce decree was in the nature of alimony and support to her and was thus

excepted from discharge pursuant to 11 U.S.C. § 1328(a)(2) and 11 U.S.C. § 523(a)(5).[8] The Defendant contests that characterization and asserts that the debt in question has been discharged because, rather than alimony or support, the debt was in the nature of a property settlement and therefore does not fall within the § 523(a)(5) exception to discharge.

### Discussion

§ 1328(a)(2) of the Bankruptcy Code provides that:

As soon as practicable after completion by the debtor of all payments under the plan, unless the Court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt——

(2) of the kind specified in paragraph (5), (8), or (9) of section 523(a) of this title.

§ 523(a)(5) provides an exception to discharge for any debt:

to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a

---

7. This order provided, in relevant part, that:
   1. Pursuant to 11 U.S.C. § 1328(a), the debtor is discharged from all debts provided for by the plan or disallowed under 11 U.S.C. § 502, except any debt:
   . . .
      b. in the nature of alimony to, maintenance for, or support of a spouse, former spouse, or child of the debtor in connection with a separation agreement, divorce decree or other order of a court or rec-

ord, or property settlement agreement, as specified in 11 U.S.C. § 523(a)(5).

8. Actually the Plaintiff also sought a declaration that the debt was nondischargeable under 11 U.S.C. § 523(a)(15), but the Court granted summary judgment for the Defendant on that claim because the complaint was not brought within the deadline established by Fed.R.Bankr.P. 4007(c).

governmental unit, or property settlement agreement, *but not to the extent that*——

(B) such debt includes a liability designated as alimony, maintenance, or support, *unless* such liability is *actually* in the nature of alimony, maintenance, or support.

(emphasis added).

■ In adversary proceedings to determine the dischargeability of a debt, the creditor must prove her claim of nondischargeability by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Thus, for the Plaintiff to prevail in this case, she must show by a preponderance of the evidence that the Defendant's unpaid obligations arising from the agreed divorce decree are in the nature of alimony, maintenance, and or support.

■ As the Fifth Circuit has noted, the question of whether a debt created in a divorce agreement is truly in the nature of alimony or support is a matter of federal bankruptcy law, not state law. *Matter of Biggs,* 907 F.2d 503, 504 (5th Cir.1990) Because parties and state courts do not necessarily label obligations with federal bankruptcy standards in mind, "bankruptcy courts must therefore look beyond the labels which state courts-and even the parties themselves-give obligations which debtors seek to have discharged." *Matter of Dennis,* 25 F.3d 274, 277 (5th Cir.1994), cert. denied, 513 U.S. 1081, 115 S.Ct. 732,

130 L.Ed.2d 636 (1995). This is particularly true as to divorce decrees from Texas courts which until 1995 were precluded from imposing any type of permanent alimony and whose current authority to mandate the payment of alimony is extremely limited.[9] Accordingly, courts construing such decrees have long recognized that "support in the future can play a significant role in the divorce court's property division and that what may appear to be a mere division of assets may in fact, under a Texas decree, contain a substantial element of alimony-substitute, support or maintenance, however termed." *Nunnally v. Nunnally (In re Nunnally),* 506 F.2d 1024, 1027 (5th Cir.1975). Thus, it is critical to "place substance over form to determine the true nature and purpose of the award, regardless of the label used." *Joseph v. J. Huey O'Toole P.C. (In re Joseph),* 16 F.3d 86, 88 (5th Cir.1994).

■ However, in this case, the Plaintiff claims that the characterizations in the divorce decree were accurate. She testified that the payments actually were in the nature of alimony and support which were designed by the parties to provide support for her and for the children as she attempted to resume her college education so that she could support herself thereafter without the assistance of the Defendant. The Defendant conversely testified that, although the divorce decree actually denominated the payments owing to his ex-spouse as "alimony," the payments

9. In 1995 Texas became the last state in the nation to allow a court to impose on one ex-spouse a duty to provide support to the other ex-spouse out of future income. Up to that time, any such order would have been declared void as against the public policy of the State, although the Texas Supreme Court had earlier determined that a settlement agreement between a husband and wife obligating one spouse to make periodic payments in support of the other after divorce could be incorporated into a final divorce decree without constituting improper court-ordered alimony. *See Francis v. Francis,* 412 S.W.2d 29, 32 (Tex.1967). Although the new spousal maintenance statute was a significant step, the eligibility requirements under the statute are restrictive, the payments are generally limited to a three-year period, and the monthly payment may not exceed $2,500. *See* Tex. Fam.Code Ann. § 8.001 et. seq. (West Supp. 2001).

were really designed to equalize the division of marital assets and thus were in the nature of a property settlement. The Defendant testified that the term "alimony" was used in the divorce agreement to describe the payments solely as a means to allow him to deduct the payments on his income tax returns.[10]

▮▮▮ While it is unusual to be presented with the opposite situation of whether alimony characterizations in a divorce decree actually constituted a property settlement, the evaluation principle still stands——substance over form and——the Court must attempt to ascertain the true nature of the debt owing by the Defendant. To assist courts in determining whether an obligation is truly in the nature of alimony and support, a non-exhaustive list of factors has evolved in the jurisprudence in this area. These considerations "are not legal criteria . . . but relevant evidentiary factors that assist the bankruptcy court as trier of fact in determining the true nature of the debt created by the agreement." *Benich v. Benich (In re Benich)*, 811 F.2d 943, 945 (5th Cir.1987). They include: (1) the parties' disparity in earning capacity; (2) their relative business opportunities; (3) their physical condition; (4) their educational background; (5) their probable future financial needs; and (6) the benefits each party would have received had the marriage continued. *Dennis*, 25 F.3d at 279, *citing Joseph*, 16 F.3d at 88; *see also In re Holland*, 48 B.R. 874, 876 (Bankr.N.D.Tex.1984). These factors are to be considered as of the date of

the divorce, not at the time of the dischargeability proceeding. *In re Martinez*, 230 B.R. 314, 318 (Bankr.W.D.Tex.1999).[11]

The evidence in this case conclusively demonstrates that there was a great disparity between the relative positions of the two parties at the time of their divorce. The Defendant–Debtor had completed his education as a veterinarian and had developed a successful practice. His practice had grossed approximately $176,000.00 in the year prior to the divorce and he had every reason to believe that the practice would continue to thrive in a community in which he faced no business competition.

On the other hand, the Plaintiff was unemployed. She was facing the prospect of providing for the welfare of a 16 year-old daughter and a 12 year-old son and the amount of agreed child support, if paid, was insufficient to even cover the monthly mortgage payment on her family's home. She had earlier forfeited her opportunity to gain a college education in order to support her family while the Defendant was in school, and had thereafter worked at the veterinary clinic for 13 years without ever receiving (nor likely expecting) a salary. She had been contributing to the "family business" and likely would have continued her contributions to the family's welfare in that role had the marriage continued. Even the Defendant conceded on cross-examination that, upon the occurrence of the divorce, the Plaintiff's prospects for gaining similar employment in Alto, Texas were non-existent and she pos-

---

10. Actually there was no evidence that any such deduction was actually taken. The Defendant could not recall whether he had or not. Thus, the principle of estoppel cannot be applied against the Defendant in this case as it was in *Matter of Davidson*, 947 F.2d 1294, 1297 (5th Cir.1991) in which the agreement had labeled certain payments as alimony and the debtor had actually taken tax deductions

on the basis of that characterization. *But cf.*, *Kritt v. Kritt (In re Kritt)*, 190 B.R. 382, 388 (9th Cir. BAP 1995); *In re Kelley*, 216 B.R. 806, 808 (Bankr.E.D.Tenn.1998).

11. Thus the testimony elicited regarding the Plaintiff's educational and employment activities in the years since the divorce is not relevant to the Court's determination.

sessed no college degree upon which to base her future efforts to obtain new employment.

Thus, the surrounding circumstances do not support the Defendant's contention that, notwithstanding the characterizations used by the parties, the alimony payments constituted a property settlement designed to offset the disparity in the asset division arising from his retention of the veterinary clinic. What the payments were really designed to offset was the vast difference in the relative economic positions of the parties upon divorce—an inequality which the Plaintiff had consciously helped to create by her support and sacrifice—an inequality that threatened the ability of the Plaintiff to provide for the future health, education and comfort of herself and her children—and an inequality which jeopardized the likelihood that the children could remain near their father in Alto. These are precisely the type of conditions which have led bankruptcy and appellate courts to construe obligations to be in the nature of alimony and support, even when they are labeled otherwise. Here they were labeled correctly. Though not credible to this Court, if one accepts the Defendant's contention that the payments were characterized as alimony as a ruse to reap some undeserved tax benefits, perhaps it is then ironic that the characterizations utilized were, in fact and in law, the correct and proper description of their nature.

Because the Plaintiff has established by a preponderance of the evidence that the true nature and purpose of the payments to be made by the Defendant to the Plaintiff under their agreed divorce decree were in the nature of alimony and support, and in light of the generally undisputed

amount of the claim, the Court concludes that the debt due and owing by the Defendant, Daniel W. Kessel, to the Plaintiff, Suzette C. Kessel, in the amount of $61,450.91, plus post-judgment interest at the current federal post-judgment interest rate of 4.07% until paid, is hereby declared to be non-dischargeable under 11 U.S.C. § 523(a)(5). This memorandum of decision constitutes the Court's findings of fact and conclusions of law[12] pursuant to Fed. R.Civ.P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed. R.Bankr.P. 7052. An appropriate judgment will be entered which is consistent with this opinion.

12. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.